Commonwealth of Pennsylvania, Department of Environmental Resources, Petitioner *v.* Chester A. Ogden, President, Coal Hill Contracting Company, Inc., Respondents.

154

Argued May 9, 1985, before Judges DOYLE and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Donald A. Brown*, Assistant Counsel, for petitioner.

*Allan E. MacLeod*, for respondent.

OPINION BY JUDGE COLINS, November 25, 1985:

This is an appeal by the Commonwealth of Pennsylvania, Department of Environmental Resources (DER) from an adjudication of the Environmental Hearing Board (EHB). The EHB held that DER had improperly forfeited two bonds issued to Coal Hill Contracting Company, Incorporated (Coal Hill) by Clearfield Bank and Trust Company (Clearfield Bank) as surety to the Commonwealth of Pennsylvania to guarantee compliance by Coal Hill with the requirements of the Surface Mining Conservation and Reclamation Act (SMCRA).[1]

From 1974 to 1978, Coal Hill was authorized, under six permits issued pursuant to SMCRA, to conduct surface coal mining operations in Lawrence and Bradford Townships in Clearfield County, Pennsylvania. At issue in the instant case are mining permits 1470-1, 1470-1A, 1470-1(A2), and 1470-1(A3)[2] and 1470-3,

---

[1] Act of May 31, 1945, P.L. 1198, as amended, 52 P.S. §§1396-1396.25.

[2] On August 7, 1974, C. A. Ogden Company executed and submitted to DER surety bond No. 217B6839 in the amount of $11,500.00 as a condition of obtaining mining permit 585-5A. On November 5, 1975, a change rider was submitted to DER changing the principal's name on the bond to Coal Hill. The bond was issued by Traveler's Indemnity Company. DER issued mining permit 1470-1 to Coal Hill on October 27, 1978; a special permit condition transferred the liability and obligation under surety bond No. 217B6839 which had been previously incurred by C. A. Ogden Company under mining permit 585-5A.

C. A. Ogden Company executed and submitted to DER surety bond No. 218B2244 in the amount of $15,640 as a condition of obtaining mining permit 585-5(A2) on October 25, 1974. On November 5, 1975, a change rider was submitted to DER changing the principal's name on the bond to Coal Hill. The bond was issued by Traveler's Indemnity Company. DER issued mining permit 1470-1A to Coal Hill on October 27, 1978; a special permit condition transferred the liability and obligation under surety bond No. 218B2244 which had been previously incurred by C. A. Ogden Company under mining permit 585-5(A2).

granted to Coal Hill for its operations in Bradford Township.

As a condition of obtaining mining permits 1470-2 and 1470-2A, Coal Hill submitted to DER a bond in the amount of Twenty-three Thousand Dollars ($23,000.00). The terms of that bond provide that liability shall accrue in proportion to the area of land affected by surface mining at the rate of Five Hundred Seventy-five Dollars ($575.00) per acre or part thereof. To obtain mining permit 1470-2(A2), Coal Hill submitted a Five Thousand Dollar ($5,000.00) bond to DER which stated that liability shall accrue in proportion to the area of land affected by surface mining at the rate of Five Hundred Dollars ($500.00) per acre or part thereof. Finally, in order to receive permit 1470-3, Coal Hill submitted to DER Surety Bond No. 558E2324 in the amount of Seven Thousand One Hundred Dollars ($7,100.00). Surety Bond No. 558E2324 provides that liability upon the bond shall accrue in proportion to the area affected by surface mining at the rate of One Thousand Dollars ($1,000-.00) per acre or part thereof. All of the above bonds

The terms of surety bond No. 217B6839 and surety bond No. 218B2244 provide that liability shall accrue in proportion to the area of land affected by surface mining at the rate of Five Hundred Seventy-five Dollars ($575.00) per acre or part thereof.

On October 14, 1975, Coal Hill assigned to DER savings certificate No. 977 in the amount of Two Thousand Four Hundred Dollars ($2,400.00) as a condition of obtaining mining permit 585-5(A3). The savings certificate was drawn on the Clearfield Bank and Trust Company. DER issued mining permit 1470-1(A2) to Coal Hill on October 27, 1978; a special permit transferred the liability and obligation under savings certificate No. 977 which had previously accrued by C. A. Ogden Company under withdrawn mining permit 585-5(A3). The terms of the collateral bond submitted as a condition of obtaining mining permit 585-5(A3) (now permit 1470-1(A2) affected by surface mining at the rate of Five Hundred Dollars ($500.00) per acre or part thereof.

state that in no case shall such liability be for an amount less than Five Thousand Dollars ($5,000.00).

Mining permits 1470-2, 1470-2A, 1470-2(A2),[3] and 1470-3 were issued for 20 acres, 20 acres, 10 acres, and 7.1 acres respectively, all of which were worked by Coal Hill.[4] No reclamation work was completed in the affected areas pertaining to permits 1470-2 and 1470-3. However, all of the affected acres associated with permits 1470-2A and 1470-2(A2) have been restored.

. Notice of the forfeitures of the bonds submitted for permits 1470-2, 1470-2A, 1470-2(A2), and 1470-3 was sent to Coal Hill on July 9, 1982. Additionally, Coal Hill had also failed to restore a three-acre area

---

[3] On March 17, 1976, Coal Hill assigned to DER savings certificate No. 879 in the amount of Twenty Three Thousand Dollars ($23,000.00) as a condition of obtaining mining permit 585-6. The savings certificate was drawn on Clearfield Bank. DER issued mining permits 1470-2 and 1470-2A to Coal Hill on October 30, 1978; a special condition of both permits transferred the liability and obligation under the bond associated with permit 585-6 which had previously accrued to C. A. Ogden Company.

On March 17, 1976, Coal Hill assigned to DER savings certificate No. 976 in the amount of Five Thousand Dollars ($5,000.00) as a condition of obtaining mining permit 585-6A. The savings certificate was drawn on Clearfield Bank. DER issued mining permit 1470-2(A2) to Coal Hill on October 30, 1978; a special permit condition transferred the liability and obligation under the bond associated with permit 585-6A which had previously been incurred by C. A. Ogden Company.

[4] Mining permit 1470-1 was issued for 20 acres; 10.2 acres were affected by Coal Hill. Coal Hill graded six acres on permit 1470-1 to approximate original contour and accomplished no reclamation of the remaining 4.2 affected acres.

Mining permit 1470-1A was issued for 27.2 acres; 17.3 were affected by Coal Hill. Coal Hill graded six acres on permit 1470-1A to approximate original contour and accomplished no reclamation of the remaining 11.3 affected acres.

Mining permit 1470-1(A2) was issued for 4.8 acres; 0.5 acres were affected by Coal Hill. No reclamation of the 0.5 affected acres was accomplished.

adjacent to the Bradford Township site, not covered by a mining permit. Coal Hill appealed the forfeitures to the EHB. On August 6, 1984, the EHB sustained the forfeiture of the bonds associated with permits 1470-2 and 1470-3, but concluded that DER had abused its discretion by forfeiting the bonds submitted as a condition of obtaining mining permits 1470-2A and 1470-2(A2).[5] On August 27, 1984, DER petitioned the EHB for reconsideration of its decision, and likewise, on September 5, 1984, petitioned this Court for a review of the decision. The petition for reconsideration was subsequently denied by the EHB on September 7, 1984.

Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact are supported by substantial evidence. *Lucas v. Department of Environmental Resources*, 53 Pa. Commonwealth Ct. 598, 420 A.2d 1 (1980).

The bonds state in pertinent part that:

NOW THE CONDITION OF THIS OBLIGA-
TION is such that if the principal shall faith-
fully perform all the requirements of (1) Act
418, (2) the Act of Assembly approved June
22, 1937, P.L. 1987, as amended, known as 'The

---

[5] The EHB concluded that DER had met its burden of proof that Coal Hill failed to comply with the applicable statutes, rules or regulations with regard to all of the affected acreage covered by permits 1470-1, 1470-1A, and 1470-1(A2). The EHB further concluded that for each of the bonds associated with the above permits, with the exception of permit 1470-1(A2), forfeiture was appropriate in an amount equal to the number of acres affected and not reclaimed multiplied by the per acre liability specified in the applicable bonds. Forfeiture of the entire amount of the bond associated with permit 1470-1(A2) is appropriate; the minimum liability condition of the bond is applicable where the forfeiture would otherwise be for an amount less than Five Thousand Dollars ($5,000.00).

Clean Streams Law"[6] (Act 394), (3) the applicable rules and regulations promulgated thereunder and (4) the provisions and *conditions of the permits issued thereunder* and designated in this bond (all of which are hereafter referred to as 'law'), then this obligation shall be null and void, otherwise to be and remain in full force and effect in accordance with the provisions of the law. (Emphasis added.)

It is important to note that the bonds became part of the permits issued by DER. The purpose of the bonds is to reimburse the Commonwealth for damages which may arise from non-compliance with the requirements of SMRCA insofar as the non-compliance relates to the permitted area.

Petitioner posits that the EHB should be reversed due to its conclusion that the bonds in question were "mere contracts" rather than "statutory bonds" of a "penal nature". This argument misses the point. All bonds required by statute are "statutory" in nature, such that the contract between the parties may be controlled, in part, by legislative intent. The bonds in the instant matter can certainly be considered as "penal" in nature, as DER need not prove actual damages where an operator has breached the condition of the surety. *See American Casualty Company of Reading v. Department of Environmental Resources,* 65 Pa. Commonwealth Ct. 223, 234, 441 A.2d 1383, 1388-1389 (1982). The characterization of the bonds does not control; but rather the areas covered by the bonds.

Petitioner further argues that it can forfeit all of the bonds submitted by Coal Hill because Coal Hill has mined off the permitted area and has refused to complete reclamation of this affected area.

---

[6] "The Clean Streams Law", Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§691.1-691.1001.

We hold that each bond was issued as part of a specific permit and not as an umbrella to cover all mining being performed by the operator and as such, we affirm the order of the EHB.

25 Pa. Code §86.1 defines surface mining activities to include "all [those] activities in which the land surface has been or is disturbed *as a result of or incidental* to surface mining operations. . . ." (Emphasis added.)

We interpret the above definition to include those circumstances where the operator accidently or intentionally goes beyond the geographical boundaries of the area specified in the permit. The three acres in the instant case, which were affected by Coal Hill, clearly fall within the above definition. However, the off-permit mining and/or the failure to reclaim this area does not justify the forfeiture of *all* the bonds posted for the other permitted areas. It is more appropriate that a portion of the bond or the entire bond be forfeited to complete reclamation in a non-permitted area only when the permitted area is adjacent to or contiguous to the affected off-permit area, or is one in which the ecological harm may be traced directly to the specifically permitted area.

To espouse a policy that allows forfeiture of bonds when the ecological damage occurs on a totally unrelated area amounts to an abuse of discretion by DER. Pennsylvania is a vast state with many coal companies operating in various counties of the Commonwealth. It is not uncommon for a coal company to be conducting mining operations in several counties simultaneously. To hold a company's bonds subject to forfeiture in county "A" for unrelated operations in county "B" would place an intolerable burden upon the surety and as such act as a deterrent to the issuance of any mining related surety. It would become

actuarially impossible for surety companies and bonding agencies to issue bonds knowing that they may be forfeited for damages caused by totally unrelated mining operations in totally unrelated areas.

In the case at bar, bond No. 558E2324 was posted for the permitted area adjacent to the three acres mined without a permit. Bond No. 558E2324 was submitted as a condition of receiving permit 1470-3. This entire bond has been forfeited because Coal Hill failed to reclaim the acreage associated with permit 1470-3. The amount of the bond forfeited is not sufficient to complete reclamation of the contiguous non-permitted acreage. Despite this, we must affirm the EHB's ruling that bonds associated with permits 1470-2A and 1470-2(A2) may not be forfeited either since these bonds were *not* posted for the affected off-permit area.

A proper remedy for DER to pursue against Coal Hill for its off permit mining activities is contained in Section 18.4 of the SMCRA, 52 P.S. §1396.22—the assessment of a civil penalty. *See Western Hickory Coal Company v. Department of Environmental Resources*, 86 Pa. Commonwealth Ct. 562, 485 A.2d 877 (1984).[7]

With respect to permits 1470-2 and 1470-3, DER Mine Inspector Forcy testified that no reclamation had been accomplished. Accordingly, the entire per acre liability on these bonds was forfeited; being Eleven Thousand Five Hundred Dollars ($11,500.00) for permit 1470-2 and Seven Thousand One Hundred Dollars ($7,100.00) for permit 1470-3. Coal Hill introduced no evidence to counter this testimony. Inspector Forcy, however, stated that the area of 1470-2A and 1470-2(A2) is restored and planted and in good condition.

---

[7] In *Western Hickory*, DER fined a coal company Five Thousand Dollars ($5,000.00) for mining a three-acre off-permit area.

162

The EHB properly concluded that DER had not met its burden of proof that Coal Hill failed to comply with the applicable statutes, rules or regulations with regard to the acreage covered by permits 1470-2A and 1470-2(A2) and that DER had abused its discretion in forfeiting the bonds associated with permits 1470-2A and 1470-2(A2).

Accordingly, the order of the EHB is affirmed.

ORDER

AND Now, this 25th day of November, 1985, the order of the Environmental Hearing Board, at Docket No. 82-193-G, dated August 6, 1984, is affirmed.