**AL HAMILTON CONTRACTING CO., Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.

Decided July 18, 1996.

Reargument Denied Sept. 11, 1996.

Alan F. Kirk, for petitioner.

Dennis A. Whitaker, Asst. Counsel, for respondent.

Before COLINS, President Judge, FRIEDMAN, J., and SILVESTRI, Senior Judge.

COLINS, President Judge.

Petitioner, Al Hamilton Contracting Company (Hamilton), petitions for review of an order of the Environmental Hearing Board (EHB) that affirmed the Department of Environmental Protection's (DEP)[1] denial of a request for bond release. We affirm.

The facts of this case are as follows. Hamilton is the owner and operator of a surface coal mine and processing operation located in Bradford Township, Clearfield County, Pennsylvania, known as the Little Beth site (Little Beth). Pursuant to regulations, DEP required Hamilton to carry bonds to guarantee the general environmental restoration of Little Beth. *See generally* 25 Pa. Code §§ 86.141–86.190 (detailing DEP's provisions on bonding and insurance requirements). Thus, Hamilton obtained Surface Mining Permit (SMP) No. 17723164 prior to commencing operations at Little Beth and posted the requisite bond. The SMP bond was earmarked for the cost of reclaiming the entire area permitted to be mined and for any future expense incurred in treating or replacing contaminated discharges from the site. Additionally, the SMP bond could offset any unpaid civil fines levied against Hamilton. Of the SMP bond initially posted, a total of $139,430 remained at the time of this appeal.

Because of changes in federal surface mining regulations in 1989, Hamilton was required to obtain a separate permit and post a separate bond for its coal processing operations conducted on the Little Beth site. This bond, the Mining Activities Permit (MAP) bond was unlike the SMP because it covered the cost of reclaiming areas damaged by coal processing operations, not mining activities.[2]

Thus, MAP No. 17911603 was issued to Hamilton, it covered 47.8 acres. A bond of $146,361 was posted in connection with the MAP. The 47.8 acres covered most, but not all, of the Little Beth SMP area.

Thereafter, Hamilton filed a bond release application with DEP seeking the release of $77,020 in reclamation bonds posted on 38.6 acres of the SMP area. This application was denied by DEP on May 26, 1994 for the following reasons: the existence of acid mine drainage discharges on, or emanating from, the permit area that were being treated by Hamilton pursuant to an order by DEP; inadequate groundwater monitoring information to demonstrate that the permit area was not hydrogeologically connected to other discharges of acid mine drainage on or adjacent to the permit area; and the pollution of surface and subsurface water and the probability of future pollution. Hamilton appealed DEP's determination to the EHB, which affirmed. Appeal to this Court followed.

The issue in this case involves the characterization of the two bonds. It is Hamilton's position that the SMP and MAP bonds overlap, and therefore, the SMP bond should be released to the extent of the overlap.[3] DEP argues that the bonds do not overlap. Moreover, DEP argues that if it agreed to Hamilton's bond release request, there would be insufficient funds to guarantee restoration of the area.

When reviewing decisions of the EHB, our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed by the Board, or necessary findings of fact of the Board are supported by substantial evidence. *Department of Environmental Resources v. Ogden,* 93 Pa.Cmwlth. 153, 501 A.2d 311 (1985). Substantial evidence is such relevant

1. As of July 1, 1995, the Department of Environmental Resources was renamed the Department of Environmental Protection pursuant to the Conservation and Natural Resources Act, Act of June 28, 1995, P.L. 89, 71 P.S. §§ 1340.101–1340.1103.

2. For example, the bond could be used for the removal of structures and coal piles attendant to the processing of coal.

3. This overlap occurs when a permittee conducts coal processing activities above the area of its surface mining operations. Hamilton's operation exemplified this overlap because the structures in which it conducted its coal processing activities were placed atop the area in which it conducted a portion of its surface mining.

evidence as a reasonable mind might accept as adequate to support a conclusion. *Kerrigan v. Department of Environmental Resources,* 163 Pa.Cmwlth. 565, 641 A.2d 1265 (1994). To prevail before this Court, Hamilton must prove that the EHB action was erroneous. *See Pennsylvania Game Commission v. Department of Environmental Resources,* 97 Pa.Cmwlth. 78, 509 A.2d 877, 884 (1986).

Hamilton argues that the EHB erred in affirming DEP's denial of the bond release because this denial results in an inequitable double bonding of Little Beth. Hamilton posits that since the circumstances of its operation are unique,[4] insofar as it performs coal processing and surface mining operations on the same tract of land, there need be only one bond to cover both the activities. Thus, Hamilton argues that the MAP bond should serve as a replacement to a portion of the SMP bond and that the $77,020 that represents the replacement, or the overlap of the two bonds, should be released to it.

■ Hamilton's contention concerning double bonding can not prevail because the record contains substantial evidence to support the Board's finding that DEP intended the bonds to remain separate and distinct instruments, serving separate and distinct functions. William Plassio, the District Mining Manager for DEP's McMurray District office, developed the process for permitting previously unpermitted coal processing plants. He testified that his process envisioned neither the MAP bond serving as a replacement for the SMP bond nor the commingling of liability between the SMP and MAP bonds with respect to areas in which both bonds were needed. Furthermore, he stated that different criteria are used in setting the amount of money needed for each bond irrespective of the other. Essentially, the bonds are to remain two distinct instruments serving similar, yet distinguishable, purposes.[5]

■ There being substantial evidence to support the conclusion that the MAP bond did not replace the SMP bond, we next address Hamilton's argument that the Board erred in not concluding that DEP abused its discretion. Hamilton argues that DEP abused its discretion by failing to adhere to its own Program Guidance Manual (PGM).[6] In support of this argument, Hamilton urges this Court's consideration of *Department of Environmental Resources v. Rushton Mining Co.,* 139 Pa.Cmwlth. 648, 591 A.2d 1168 (1991), wherein we set out the "binding norm test" as a means of determining whether a statement of policy reaches the level of a regulation under Section 553(b) of the Administrative Procedure Act, 5 U.S.C. § 553(b). *See also Pacific Gas & Electric Co. v. Federal Power Commission,* 506 F.2d 33 (D.C.Cir.1974); *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 374 A.2d 671 (1977). If a statement of policy is a binding norm, "the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation." *Rushton,* 591 A.2d at 1173.

---

4. Hamilton is in an uncommon situation in that it has its processing facility right on top of its mining operations. There is testimony to the fact that fewer than five of the fifty mining operations in the county share Hamilton's unique circumstances.

5. Mr. Plassio testified as follows:
   Q: When the bond calculation was done did you consider the existence of any other bonding on the Little Beth SMP?
   A: No, we did not.
   Q: So your bond calculation for the MAP was independent of the SMP; is that a correct statement?
   A: Yes, the coal mining activity permit was a separate permit and stood apart from the SMP.

(Notes of Testimony p. 163).

6. DEP uses the Bureau of Mining and Reclamation's Program Guidance Manual to determine the amount of bond required to assure long-term treatment. When the applicant does not submit any site-specific data, as is the case with Hamilton here, the PGM states that the "REMINE model should be used" to calculate the figure. Bureau of Mining and Reclamation, Program Guidance Manual, *Bond Adjustments/Release for Post–Mining Discharges,* II:04:50:6. Hamilton argues that when DEP was determining the minimum amount of bond required it deviated from the PGM guidelines in violation of its administrative authority.

We agree with Hamilton that DEP is bound by the PGM and that it should be utilized in the proper circumstances. In cases such as this, where the permittee submits no actual site specific cost data for an adjustment of the bond, the PGM requires that a program known as "REMINE" be used to calculate the annual cost of treating a discharge. Hamilton's argument here is flawed because it is based on the premise that DEP did not run the REMINE program.

■ This premise is erroneous because the EHB found that there was a *de facto* running of the program. The record illustrates that the calculation as to the minimum amount of bond needed to assure future clean up was performed by Michael Smith, the district mining manager at DEP's Hawk Run office. Mr. Smith followed the PGM instructions except that he failed to run the REMINE program, choosing instead to rely on past experiences with the program to arrive at a threshold number. Mr. Smith played a role in the development of the RE-MINE program and had extensive experience with it. Although he did not adhere completely to the PGM's directives, he had the requisite experience to determine that Hamilton's remaining SMP bond was less than a threshold determination. The testimony of Mr. Smith was accepted as credible, and as a reviewing court, we are foreclosed from reversing credibility determinations. *Szarko v. Department of Environmental Resources,* 668 A.2d 1232 (Pa.Cmwlth.1995). Based on Mr. Smith's testimony the EHB concluded that the same result would have followed assuming Mr. Smith followed every directive in the PGM. Hence, we conclude the failure of DEP to run the REMINE program, under the circumstances herein presented, was harmless error.[7]

■ Hamilton next argues that the EHB's finding relative to the ongoing polluted discharge is not supported by substantial evidence. This Court gives great deference to the determinations of an administrative agency because of the agency's specialized technical knowledge. *Harman Coal Co. v. Department of Environmental Resources,* 34 Pa.Cmwlth. 610, 384 A.2d 289 (1978). Here, DEP is authorized to decide whether the criteria for bond release are met, and we will not upset its determinations if they are supported by substantial evidence. *Id.; see also* 25 Pa.Code §§ 86.170–86.175 (concerning the release of bonds).

In a prior adjudication, DEP ordered Hamilton to treat an acid mine drainage located on Little Beth's northern border known as the culvert discharge. Mr. Smith, the individual at DEP who made the final determination regarding Hamilton's bond release application, testified that the culvert discharge continued to pollute the surface and subsurface areas surrounding the SMP area and that there was inadequate groundwater monitoring of the area. He also stated that the treatment of acid mine drainage is an integral part of the reclamation of the site. Thus, Mr. Smith opined that Hamilton had not complied with the reclamation plan because of the ongoing culvert discharge.

Mr. Smith concluded that under 25 Pa. Code § 86.172(c),[8] he was prohibited from releasing any amount of the bond. Mr. Smith calculated that a minimum of roughly $270,000 is required to assure the long-term treatment of the discharge from Hamilton's site. Because only $139,470 remains on the SMP bond originally posted, it is obvious that the future clean-up cost will exceed the remaining bond.

Further, the record indicates that DEP's denial of the bond release was proper in

---

7. Moreover, if we were to overturn this case simply because of a minor deviation, as Hamilton requests, we would have to scrutinize every implementation of the PGM. This we have neither the desire nor the power to do. Although we do not suggest that the DEP's actions with respect to the PGM should be condoned, Hamilton was not adversely affected by the deviation.

8. The Department will not release or adjust bonds if the release or the adjustment would

reduce the amount of bond to less than that necessary for the Department to complete the approved reclamation plan; achieve compliance with requirements of the acts, regulations thereunder and the conditions of the permits; and abate significant environmental harm to air, water or land resources or danger to the public health and safety which may occur prior to the release of bonds from the permit area. 25 Pa.Code § 86.172(c)

relation to its examination of the criteria set out in 25 Pa.Code § 86.171(f). The section sets guidelines that DEP will consider in determining whether a bond release would be proper. Included in these guidelines is an examination of whether the permittee had satisfactorily completed the reclamation plan, and also whether there is pollution of surface or subsurface water occurring and whether there is the probability of future pollution. As discussed above, DEP made a determination, and the EHB so found, that a current pollution problem (the culvert discharge) presented a future concern. This finding is supported by Mr. Smith's testimony.

█ Thus, we conclude that the record contains substantial evidence that the polluted discharge emanating from Little Beth will continue to exist for an extended period of time and that there exists the possibility of future additional discharges from the site.

Accordingly, the order of the EHB is affirmed.

### ORDER

AND NOW, this 18th day of July, 1996, the order of the Environmental Hearing Board in the above-captioned matter is affirmed.