600 A.2d 646

**Mary K. CASHDOLLAR, Lynn Witthoeft, Cynthia Richards and Leslie M. Diehl, Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, STATE HORSE RACING COMMISSION and Mountainview Thoroughbred Racing Association, Inc., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1991.

Decided Dec. 2, 1991.

Thomas W. Scott, for petitioners.

Sandra W. Stoner, Deputy Atty. Gen., for respondent State Horse Racing Com'n.

Bradley K. Moss, for respondent Mountainview Thoroughbred Racing Ass'n, Inc.

Before DOYLE and BYER, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Mary K. Cashdollar, *et al.* (residents) appeal from a State Horse Racing Commission (Commission) order which approved part I of a nonprimary location[1] application to be located in Chambersburg, submitted by Mountainview Thoroughbred Racing Association, Inc., (Mountainview). The

---

1. A nonprimary location is commonly referred to as an off-track betting parlor (OTB).

residents also appeal the Commission's orders denying their motion for an evidentiary hearing and petition to intervene.[2]

Mountainview submitted an application to the Commission for a proposed OTB site. Pursuant to 58 Pa.Code § 171.23 the Commission publicized notice of a public hearing to ascertain how the OTB would impact the local community in compliance with Section 218 of the Race Horse Industry Reform Act.[3]

The Commission visited the proposed site and then conducted a public hearing, where residents expressed their opinions concerning the proposed OTB site. In addition to the public hearing, the Commission received numerous letters from residents regarding the proposed OTB. The crux of the opposition was based on the following: (1) religious and moral opposition; concern about (2) the type of patrons; (3) the increase in traffic; (4) the type of jobs being created, i.e., waitresses, security guards, janitors and clerks; (5) the lack of local community betting; and (6) an OTB facility in a "village like" setting.

After the public hearing, the Commission determined that Mountainview's OTB application satisfied the legislative intent of the Act. The Commission therefore approved the application. When the residents learned that Mountainview's OTB application was approved, they filed with the Commission a motion for an evidentiary hearing and a petition to intervene. Both the motion and the petition were denied. Contemporaneously, the residents filed petitions for review in this Court in our appellate and original jurisdictions.[4]

2. The appeal from the Commission's approval of the OTB application and the appeals from the Commission's orders denying an evidentiary hearing and petition to intervene were consolidated by Order of this Court 5/17/91.

3. Section 218 of the Race Horse Industry Reform Act, Act of December 17, 1981, P.L. 435, as *amended,* 4 P.S. § 325.218.

4. Mountainview's preliminary objections to this court's original jurisdiction were sustained. Therefore, we are considering only the petition to our appellate jurisdiction.

■ The Commission raises a threshold inquiry of whether the residents have standing to appeal its orders. Generally, to have standing, a party must have an interest in the controversy that is distinguishable from the interest shared by other citizens. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). The interest must be immediate rather than remote; there must be a sufficient causal connection between the challenged action and the asserted injury. *Id.*

■ We are mindful of these general rules with respect to standing, but we are equally mindful that these rules are subject to exceptions in some cases involving specific areas of the general public. The exception was carved out by our Supreme Court in *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979) and recently articulated in *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988).

To surpass that common interest, the interest must be substantial, direct and immediate. In *Biester,* however, we determined that certain cases warrant the grant of standing to taxpayers where their interest arguably is not substantial, direct and immediate. *Biester,* 487 Pa. at 444, 409 A.2d at 852. In reaching that conclusion, we considered *Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A.2d 619 (1967), where this court announced that "although many reasons have been advanced for granting standing to taxpayers, the fundamental reason for granting standing is simply that otherwise a large body of governmental activity would be unchallenged in the courts." *Biester,* 487 Pa. at 445, 409 A.2d at 852. Furthermore, we noted that:

The ultimate basis for granting standing to taxpayers must be sought outside the normal language of the courts. Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.... Such litigation allows the courts, within the framework of traditional notions of 'standing' to add to the controls

over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts.

*Biester, supra,* 487 Pa. at 443 n. 5, 409 A.2d at 851 n. 5. *See also Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986).

Moreover, in *Biester,* we considered that the issue was likely to escape judicial review when those directly and immediately affected by the complained of conduct were beneficially affected as opposed to adversely affected. We also recognized that "consideration must be given to other factors such as, for example, the appropriateness of judicial relief, the availability of redress through other channels, or the existence of other persons better situated to assert the claim." *Biester,* 487 Pa. at 446, 409 A.2d at 852. *(Quoting, Government of Guam, ex rel. Camacho v. Bird,* 898 [398] F.2d 314 (9th Cir.1968) (citations omitted)).

In this case, we believe that the special circumstances involved warrant the grant of standing to petitioner under the exception articulated in *Biester.* If standing were not granted to the petitioner, this election would otherwise go unchallenged because respondents are directly and beneficially affected.

There can be no doubt that decisions made by the State Horse Racing Commission are decisions which involve the general public interest. The Supreme Court has said that such decisions are "fraught with public interest." *Man O'War Racing Association v. State Horse Racing Commission,* 433 Pa. 432, 439, 250 A.2d 172, 176, (1969). The statute itself commands the Commission not only to consider "the public interest" but more particularly to consider the "impact on the local community." It would seem anomalous to command the Commission to take those factors into consideration and then to hold that the persons who make up the "local community" have no standing to argue that the commission failed to consider the factors the legislature told it to consider.

■ We are mindful that in *Sprague* standing was granted based on appellant's status as a taxpayer. However, we find the present case analogous for the purpose of deciding standing and conclude in this case, as the court did in *Sprague,* that if the residents are denied standing to challenge a decision of the Commission, *no one* remains who has standing. Those who are given standing by the Act to appeal the Commission's decisions are beneficially affected, not adversely affected, and therefore unlikely to appeal. Thus, without standing, this decision and similar decisions of the Commission on OTB applications, would go unchallenged throughout the Commonwealth, leaving the Commission with unfettered discretion. We therefore, hold the residents have standing and turn to their specific contentions.[5]

■ The residents argue that they were denied due process in the Commission's approval process of the OTB site application, because the Commission did not comply with the Administrative Agency Law.[6] Specifically, the residents contend that they were entitled to be represented by counsel, to present evidence and to cross-examine witnesses. The residents also argue that the Commission abused its discretion in denying their motion for an evidentiary hearing and their petition to intervene.[7]

From our review of the record, we have determined that the Commission provided notice of a public hearing to the residents of Chambersburg in order to determine how the OTB would affect the local community. At the public hearing, twenty-nine people expressed their opinions to the

5. It is rather curious that the legislature in enacting the Act gave an unsuccessful applicant the right to an evidentiary hearing but provided no such right to a citizen or group of citizens who oppose the establishment of an OTB. It is not for us to question the wisdom of the legislature in this respect. However, it is up to the Court to decide standing.

6. Administrative Agency Law, 2 Pa.C.S. §§ 501–508, §§ 701–704. We note from the Commission's brief it now provides in written form its findings and reasons for approval of a nonprimary application.

7. Because we have granted the residents standing in this Court, the denial of their petition to intervene, if it was error, was harmless.

Commission concerning the OTB application. In addition, several residents were represented by counsel, who conveyed to the Commission the residents' objections about the OTB application.[8] At no time during the public hearing did the residents object to the Commission's administration of the hearing. Indeed, the residents did not request an evidentiary hearing or petition to intervene until after the Commission issued its order approving Mountainview's OTB application.

If the residents objected to the Commission's administration of the hearing, their counsel should have made such an objection during the hearing. Moreover, if the residents thought they were entitled to an evidentiary hearing or to be granted status as intervenors, the proper time to raise those contentions was during the hearing and not after the Commission rendered its decision against them. The residents were apparently satisfied with the procedure at the hearing until the decision was adverse to their position. Therefore, we conclude that the residents have waived their right to raise these objections. *Man O'War.*

Next, we address whether substantial evidence supports the Commission's order approving the OTB site application. Substantial evidence is such evidence that a reasonable mind would accept as adequate to support a conclusion. *McKenna v. Pennsylvania State Horse Racing Commission*, 83 Pa.Commonwealth Ct. 116, 476 A.2d 505 (1984). The legislature has delineated certain factors the Commission shall consider in reviewing an OTB application, which are as follows:

> (iii) In determining whether the nonprimary location statement meets the legislative intent of this amendatory act, the appropriate commission shall consider factors which include but are not limited to the following:
>
> (A) The purposes and provisions of this amendatory act.

---

8. We do not accept the argument advanced that the residents were denied counsel at the public hearing as the record indicates otherwise. Public Hearing 12/10/90, pp. 81–87.

(B) The public interest.

(C) The integrity of live racing.

(D) The impact on the local community.

(E) The potential for job creation.

(F) The quality of the physical facilities and all services to be provided therein.

 The Commission's review of the application substantially complied with the mandate of the Act. There is ample evidence that the above mentioned factors were considered. The public hearing was held to ascertain the impact on the local community, the application addressed the creation of jobs and the quality of the physical facilities, and the other factors were sufficiently addressed. The Commissioners discussed these factors when they handed down the decision to grant Mountainview's application and determined that the proposed site did not violate the criteria.[9]

 The legislature has vested wide discretion with the Commission, and this court must grant deference to its orders. *Man O'War.* In order to overturn the Commission's decision we must find a clear abuse of discretion, which is not merely an error of judgment, but an instance where, upon reaching a conclusion of law, the Commission has overridden or misapplied the law *Id.* That has not occurred in the present case.

Accordingly, we affirm the Commission's orders.

## ORDER

AND NOW, this 2nd day of December, 1991, the Order of the State Horse Racing Commission dated December 19, 1990 approving Mountainview's Phase I nonprimary location statement is hereby affirmed. The orders dated February 13, 1991, denying the petitioners' motion for an eviden-

9. Commission Meeting Excerpts, 12/19/90, pp. 1–7.

tiary hearing and denying their petition to intervene are hereby affirmed.

BYER, J., concurs in result only.