PITTSBURGH PALISADES
PARK, LLC, Petitioner

v.

PENNSYLVANIA STATE HORSE
RACING COMMISSION, and Presque
Isle Downs Inc., Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2003.
Decided March 4, 2004.

Thomas L. VanKirk, Pittsburgh, for petitioner.

G. Thompson Bell, III, Reading, for respondent, Presque Isle Downs, Inc.

R. Douglas Sherman, Harrisburg, for respondent, PA State Horse Racing Commission.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

We are asked to decide whether, on remand for further proceedings, the Pennsylvania State Horse Racing Commission (Commission) erred by failing to permit intervention by a new applicant for a license.

After various proceedings but without a trial-type hearing, a license was granted to Presque Isle Downs, Inc. (Presque Isle) to conduct thoroughbred horse racing with pari-mutuel wagering in accordance with the Race Horse Industry Reform Act (Reform Act).[1] Appeals were taken by two objectors. Following argument before this Court, one of the objectors, MEC Pennsylvania Racing, Inc. (MEC), sought permission to withdraw its appeal requesting a formal hearing. A few days later, this Court entered an order granting MEC the relief it requested on appeal, namely vacation of the Presque Isle license and remand to the Commission for a trial-type hearing for the objectors. *MEC Pennsylvania Racing, Inc., v. Pennsylvania State Horse Racing Comm'n*, 827 A.2d 580, 590–91 (Pa.Cmwlth.2003).[2] The Court simultaneously denied MEC's tardy offer to withdraw its appeal.

During this extended process, two events material to the present appeal occurred. First, the current appellant, Pittsburgh Palisades Park, L.L.C. (Pittsburgh Palisades), which was not in existence when the license was granted initially to Presque Isle, filed an application for a thoroughbred racing license. Second, the Commission, recognizing the keen competition among numerous applicants for one remaining license, published as policy a new review process. Under the new review policy, "[a]ll applications received by the application closing date set forth in the Application Notice shall be placed into a single group for comparative consideration...." 7 Pa.Code § 133.5(a).

After our vacation of the Presque Isle license and remand, the Commission held a special meeting to address the license at which Pittsburgh Palisades appeared.[3] It sought intervention, invoking the new review policy.

1. Act of December 17, 1981, P.L. 435, *as amended*, 4 P.S. §§ 325.101—325.402.

2. One objector waived its right to a trial-type hearing.

3. Pursuant to our order, the Commission on July 15, 2003 scheduled a formal administrative hearing for the next day. Also on July 15, 2003, MEC notified the Commission that it no longer sought a hearing and would not participate.

The next day, July 16, 2003, the Commission cancelled the formal hearing, citing MEC's notification. Then, the Commission published notice of a "special meeting" to take place the following day, July 17, 2003.

MEC did not appear at the special meeting; rather, MEC notified the Commission that it no longer wanted a formal hearing on its objections to the Presque Isle license, that it would not participate, and that it waived its right to a hearing. Considering MEC's position, the Commission denied the request to intervene and reinstated the license to Presque Isle without a trial-type hearing.

Timely appeal to this Court by Pittsburgh Palisades followed. Pittsburgh Palisades' petition for review also requests declaratory relief in this Court's original jurisdiction. Both the Commission and Presque Isle seek summary relief on this request.

■ The Administrative Agency Law[4] governs appeals under the Reform Act. *MEC Pennsylvania Racing.* Pursuant to the Administrative Agency Law, we shall affirm unless the administrative agency's adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with the law, or that the provisions relating to practice and procedure of Commonwealth agencies (2 Pa.C.S. §§ 501–08) have been violated in the proceedings before the agency, or its adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704.

On its appeal, Pittsburgh Palisades raises several arguments. Essentially, it condemns the Commission's failure to hold a trial-type hearing. In addition, it contends that the Commission committed error by failing to apply its new review policy and to grant intervention. We conclude that the Commission was not compelled to grant intervention, and it committed no error.

■ It is well settled that granting or denying a petition to intervene is within the sound discretion of the agency involved. *West Chester Area Sch. Dist. v. Collegium Charter School,* 571 Pa. 503, 812 A.2d 1172 (2002); *Wilkinsburg Educ. Ass'n v. Sch. Dist. of Wilkinsburg,* 690 A.2d 1252 (Pa.Cmwlth.1996). A decision on intervention will not be disturbed unless there has been a manifest abuse of discretion. *Wilkinsburg Educ. Ass'n.*

Neither the Reform Act nor the Administrative Agency Law addresses intervention. We therefore turn to the General Rules of Administrative Practice and Procedure. Section 35.28, entitled "Eligibility to intervene," states in pertinent part:

(a) Persons. A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:

(1) A right conferred by statute of the United States or of this Commonwealth.

(2) An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. The following may have an interest: consumers, customers or other patrons served by the applicant or respondent; holders of securities of the applicant or respondent; employees of the applicant or respondent; competitors of the applicant or respondent.

(3) Other interest of such nature that participation of the petitioner may be in the public interest.

1 Pa.Code § 35.28(a).

Pittsburgh Palisades fails to satisfy any of these requirements so clearly as to com-

---

The purpose of the special meeting was to consider the Presque Isle license.

**4.** 2 Pa.C.S. §§ 501–08, 701–04.

pel intervention contrary to the Commission's exercise of discretion. First, it is undisputed that there is no statutory right of intervention. Nor is there anything in our opinion in *MEC Pennsylvania Racing* authorizing participation by new entities during remand.

■ Second, Pittsburgh Palisades is not "directly affected" by the reinstatement of the Presque Isle license under the previous review process. In this regard, we note that Pittsburgh Palisades does not have a license, and thus is not a competitor of Presque Isle. There is no contention that Pittsburgh Palisades is a consumer, customer, patron, employee or security holder of Presque Isle. Pittsburgh Palisades did not object to or participate in the prior review of the Presque Isle application. Also, Pittsburgh Palisades is not bound by the Commission's decision because it possesses no rights or obligations as a result of the reinstatement of the license to Presque Isle. *See Collegium Charter School,* 571 Pa. at 527, 812 A.2d at 1186. Further, any interest Pittsburgh Palisades may have as one of many applicants for a future license is too speculative to compel intervention as of right.

■ Third, Pittsburgh Palisades' interest in the Presque Isle license is not sufficient to compel intervention "in the public interest." On this issue, Pittsburgh Palisades contends it defends the public's interest in open, honest government, subject to the rule of law rather than to caprice or favoritism. What these noble contentions ignore is the public interest in finality. Presque Isle's initial application was submitted in June, 2001. There followed 16 months of noticed public meetings and written submissions involving 25 entities, including current license holders, industry associations and elected officials. *MEC Pennsylvania Racing.* As none of the participants in those extensive proceedings assigns error or seeks enlargement of the record, the public's interest in finality preponderates against purifying the process by reinitiating with a new party.

■ The Commission's new review policy does not compel a different result. When Presque Isle's application was filed in June, 2001, there were licenses available and no "comparative group consideration" policy in existence. Also, when Presque Isle's application was approved and a license issued in November, 2002, at least one other license remained available, and there was no "comparative group consideration" policy.

This was the situation when the new policy was published on May 3, 2003.[5] Under the new review policy the Commission publishes an Application Notice. 7 Pa. Code § 133.3(2). This event commences the process. The Application Notice contains an application closing date, after which no new applications shall be accepted. 7 Pa.Code § 133.4(5)(C). Applications received between the Application Notice date and the closing date comprise the group for comparative consideration. 7 Pa.Code § 133.5(a). However, no Application Notice was published and no closing date was ever set for the license issued to Presque Isle and reinstated thereafter. Clearly, the new review policy was never applied to this license, and no group for comparative consideration was established.

■ No error is evident in the decision to apply the new review policy prospectively to licenses ungranted at the time of policy publication. No statute, regulation or precedent to the contrary exists.[6] Fur-

---

5. 33 Pa. B. 2172 (2003).

6. *North Hills Passavant Hosp. v. Dep't of Health,* 674 A.2d 742 (Pa.Cmwlth.1996), re-

thermore, the decision is within the wide discretion vested in the Commission. *Cashdollar v. Pennsylvania State Horse Racing Comm'n*, 143 Pa.Cmwlth. 650, 600 A.2d 646 (1991). This is especially true here, where application of the new policy to the license at issue will require abandoning significant work and reinitiating the application and review process.

■ Also, no error is evident in the Commission's decision to forgo a trial-type hearing. As discussed, it was within the Commission's discretion to deny belated intervention to Pittsburgh Palisades. Since no other participant preserved a demand for such a hearing, no error was committed by the reinstatement of Presque Isle's license based on the ample record already developed.

■ As to that part of Pittsburgh Palisades' petition addressed to our original jurisdiction, an action seeking declaratory judgment is not an optional substitute for established or available remedies and should not be granted where a more appropriate remedy is available. *Greenberg v. Blumberg*, 416 Pa. 226, 206 A.2d 16 (1965). Where another remedy has already been sought in a pending proceeding, a declaratory judgment action should not ordinarily be entertained. *Id.* See also, 11 *Standard Pennsylvania Practice 2d*, §§ 66.10—66.11 (1996 ed.). Because Pittsburgh Palisades sought a more appropriate remedy, appeal, we decline to exercise original jurisdiction. Accordingly, we grant summary relief and dismiss the request for declaratory relief.

We do not decide whether the Commission can improve its procedures so as to enhance its image in the eyes of a skeptical public. Rather, we simply discern neither

error nor abuse of discretion in denying intervention after the completion of considerable proceedings. For the forgoing reasons, we affirm the July 17, 2003, decisions of the Commission. Further, we grant summary relief and dismiss that portion of the petition for review seeking declaratory relief.

## *ORDER*

AND NOW, this 4th day of March, 2004, the oral decision of the Pennsylvania State Horse Racing Commission denying intervention and the written Order of July 17, 2003, by the Pennsylvania State Horse Racing Commission reinstating the license of Presque Isle Downs, Inc. to conduct live thoroughbred horse race meetings with pari-mutuel wagering, with condition, are **AFFIRMED.**

In addition, the applications for summary relief are **GRANTED,** and the request for declaratory relief addressed to the Court's original jurisdiction is **DISMISSED.**

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's decision to affirm the State Horse Racing Commission's order granting Presque Isle a license to conduct thoroughbred horse racing without requiring a review of the application of Presque Isle Downs, Inc. pursuant to the Commission's newly adopted comparative review process. I note the majority's conclusion that Pittsburgh Palisades failed to preserve any right to participate in an administrative

---

lied upon by Pittsburgh Palisades, is easily distinguished. Unlike the present case, the statute in *North Hills* required simultaneous

and comparative review of applications. Moreover, after administrative action no relevant licenses remained available.

hearing addressing only the merits of Presque Isle's application and that the Commission's denial of Pittsburgh Palisade's motion to intervene in that proceeding was a proper exercise of discretion. However, because this Court's order in *MEC Pennsylvania Racing, Inc. v. Pennsylvania State Horse Racing Commission*, 827 A.2d 580 (Pa.Cmwlth.2003), vacated the Commission's order granting Presque Isle's license, and because the Commission adopted a mandatory procedure for reviewing all pending license applications before the remand order, I believe that the Commission should have included Presque Isle's application in the comparative review process.[1]

First, after vacation of the Commission's order granting Presque Isle's license, Presque Isle's legal status regarding its application for a license was no different than that of the other corporations which had submitted applications subsequent to the one submitted by Presque Isle. Presque Isle did not retain any residual right to a license by virtue of having gone through the administrative review process when that process was found to be lacking with regard to due process requirements and the hearing that was to be held after this Court's remand never occurred. The operative fact in this case is not that Presque Isle submitted its application before the adoption of the comparative review process or that the Commission previously approved Presque Isle's application; rather, it is that after vacation of the Commission's order and remand of the case Presque Isle only held a pending application before the Commission.[2]

Second, by its own terms the Commission's adopted policy defining the comparative review process is mandatory and should have been applied to the then pending application of Presque Isle.[3] Had the

1. Inasmuch as Palisades Park is one of several corporations seeking what would be one of the only two remaining thoroughbred racing licenses in Pennsylvania, it has standing to assert this claim. It has an interest "distinguishable from the interest shared by other citizens ... immediate rather than remote ... [and there is] a sufficient causal connection between the challenged action and the asserted injury." *Cashdollar v. State Horse Racing Commission*, 143 Pa.Cmwlth. 650, 654, 600 A.2d 646, 648 (1991).

2. Thus, because of the intervening vacation and remand, this case is not one in which a policy, regulation or statute is being applied retroactively to a previously concluded transaction. For example, compare the procedural posture of this case to that in *Browning–Ferris Industries, Inc. v. Department of Environmental Protection*, 819 A.2d 148 (Pa.Cmwlth.2003) (procedural regulation adopted after landfill permit issued not applicable to that permit); and *Shenango Township Board of Supervisors v. Pennsylvania Public Utility Commission*, 686 A.2d 910 (Pa.Cmwlth.1996) (policy governing cost allocation for extending water service, adopted in August 1992, not applicable to contract signed in September 1991). Procedural policies, regulations or statutory provisions that do not impair substantive rights may be applied retroactively, although what constitutes retroactive application is oftentimes uncertain. *Jaquay v. Workers' Compensation Appeal Board (Central Property Services)*, 717 A.2d 1075 (Pa.Cmwlth. 1998).

3. The most relevant sections of the Statement of Policy provide, in part:
   § 133.3 Application requirements.
   The following procedures and requirements are established for license applications:
   (1) Applications shall be submitted using the Commission's application form.
   (2) Applications shall be submitted by the application closing date, which is published by the appropriate Commission....
   (3) An applicant shall follow the procedures and requirements of the Application Notice for the application to be considered.
   ....
   § 133.5 Procedure.
   (a) All applications received by the application closing date set forth in the Application Notice shall be placed into a single group for comparative consideration by each respective Commission.

policy for comparative review not been adopted, after remand and MEC Racing's withdrawal of its hearing request, this matter would have been settled. However, the statement of policy was adopted effective May 3, 2003, or before the Court's vacation and remand order, and that policy establishes mandatory procedures for applicants seeking a horse racing license.

The Application Notice, by which the public is to be informed that applications for racing licenses have been submitted, states that the Commission will consider any and all pending or new applications made pursuant to Section 209 of the Race Horse Industry Reform Act, Act of December 17, 1981, P.L. 435, *as amended,* 4 P.S. § 325.209, the section under which Presque Isle made its application, in accordance with the new comparative review process. *See* 7 Pa.Code § 133.4 (In Considering the Present Pending Applications). Furthermore, although I agree with the general distinction between the "binding norm" of a regulation and a policy's announcement of nonbinding "tentative intentions for the future," in certain circumstances a policy not promulgated as a regulation may nevertheless be deemed binding on an administrative agency.[4] *See Al Hamilton Contracting Co. v. Depart-*

*ment of Environmental Protection,* 680 A.2d 1209 (Pa.Cmwlth.1996). While it is within the Commission's discretion whether to adopt and to proceed with the comparative review process, having decided to do so, I do not believe that it has the discretion to treat differently applicants that have applications pending before the Commission.

Third, and finally, its does not appear that submitting Presque Isle's application through the comparative review process will require an inordinate duplication of effort by the Commission or by Presque Isle. The information required to consider Presque Isle's application as part of the comparative review process has already been compiled, and any additional or more current information that may be required to complete the process can be accomplished through further hearings. Moreover, nothing would prevent the Commission from again approving Presque Isle's application and granting a license if in fact the comparative review directs such a result. The fundamental premise, however, is that the comparative review process should be followed and that all pending applications should be reviewed in accordance with that process. Thus my dissent.

---

(b) No license will be issued until all applications in the respective consideration groups have been examined and considered by the appropriate Commission.
(c) A Commission may hold a hearing and provide for public comment under § 133.6....
7 Pa.Code §§ 133.3, 133.5 (New or Amended Pari–Mutuel License Applications—Statement of Policy).

4. The cases enunciating the distinction between a binding regulation and a nonbinding statement of policy seem to deal primarily, although not exclusively, with policies that interpret a statutory provision or an existing regulation and that allow an agency much discretion in applying the policy. *See Home*

*Builders Association of Chester and Delaware Counties v. Department of Environmental Protection,* 828 A.2d 446 (Pa.Cmwlth.2003); *Moyer v. Berks County Board of Assessment Appeals,* 803 A.2d 833 (Pa.Cmwlth.), *appeal denied,* 571 Pa. 711, 812 A.2d 1232 (2002); *R.M. v. Pennsylvania Housing Finance Agency,* 740 A.2d 302 (Pa.Cmwlth.1999); *Department of Environmental Resources v. Rushton Mining Co.,* 139 Pa.Cmwlth. 648, 591 A.2d 1168 (1991). In this case, the Commission's statement of policy is not interpreting a statutory provision or regulation, but rather it is establishing a new procedure for the submission and consideration of license applications and by the policy's own language it is mandatory.

Judge COHN joins in this dissent.

Judge PELLEGRINI joins in this dissent.