928 A.2d 175

SOCIETY HILL CIVIC ASSOCIATION, Queen Village Neighbors Association, Pennsport Civic Association, Whitman Council, Inc., Paul Neuwirth, Rita Gaudet DeVecchis, Barbara Seiple and Katheleen McGrann, Petitioners

v.

The PENNSYLVANIA GAMING CONTROL BOARD, Respondent

HSP Gaming, LP, Intervenor,

Philadelphia Entertainment and Development Partners, LP, Intervenor,

Pinnacle Entertainment, Inc. and PNK (PA), LLC, Intervenor.

Supreme Court of Pennsylvania.

Submitted May 7, 2007.

Decided June 4, 2007.

2

Arthur Michael Brown, John M. Donnelly, Pro Hac Vice, Levine, Staller, Sklar, Chan, Brown & Donnelly, P.A., Atlantic City, NJ; Jennifer M. McHugh, Stephen A. Cozen, F. Warren Jacoby, Cozen O'Connor, Philadelphia; William H. Lamb, Scott Russel Withers, Lamb McErlane, West Chester; Richard A. Sprague, Charles J. Hardy, Thomas A. Sprague, Sprague & Sprague, Philadelphia, for HSP Gaming LP, intervenor.

Eric G. Fikry, Jeffrey Brent Rotwitt, Stephen David Schrier, Obermayer Rebmann Maxwell & Hippel, LLP, Philadelphia, for Philadelphia Entertainment and Development Partners, LP, intervenor.

Andrew J. Giorgione, Harrisburg, for Pinnacle Entertainment, Inc. and PNK (PA), LLC, intervenors.

Thomas W. Corbett, Jr., PA Office of Atty. Gen., for the Com. of PA, participant.

Adrian Renz King, Jr., Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, for Keystone Redevelopment Partners, LLC, participant.

Larry D. Silver, Langsam Stevens & Silver, LLP, Philadelphia, for Society Hill Civic Association, et al., petitioners.

Richard Douglas Sherman, Frank T. Donaghue, Linda S. Lloyd, Harrisburg; Arlene Fickler, Lawrence T. Hoyle, Jr., Hoyle Fickler Herschel & Mathes, LLP, Philadelphia, for PA Gaming Control Bd., respondent.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

PER CURIAM.

This direct appeal pursuant to Section 1204 of the Pennsylvania Race Horse Development and Gaming Act ("Gaming Act"), 4 Pa.C.S. § 1204, was commenced in this Court by the filing of a petition for review of the February 1, 2007 order of the Pennsylvania Gaming Control Board ("Board"). Such order granted conditional licenses to Philadelphia Entertainment & Development Partners, L.P., d/b/a Foxwoods Casino ("PEDP"), and HSP Gaming, L.P. ("HSP") for Category 2 slot machine licenses in the City of Philadelphia and denied the applications of three other applicants. Intervenor HSP (joined by PEDP and the Board) filed an application for summary relief, which alleges that Petitioners lack standing to appeal.[1]

By order dated March 13, 2007, this Court directed the parties to brief the following issues: (1) whether Petitioners have standing to appeal under Section 1204 of the Gaming Act and our decision in *Citizens Against Gambling Subsidies, Inc. v. Pennsylvania Gaming Control Board*, 591 Pa. 312, 916 A.2d

---

1. The standard for the grant of summary relief is set forth at Pa.R.A.P 1532(b), which provides that at any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear.

624 (2007) ("*Citizens*"); and (2) whether Petitioners have standing to raise their claim that Section 1204 is unconstitutional. In addition to the two issues referenced in our order, Petitioners have raised an additional nine issues challenging various aspects of the grant of licensure. For the reasons that follow, we hold that Petitioners lack standing to appeal and lack standing to assert a constitutional challenge to Section 1204. Accordingly, we dismiss the petition for review and grant the application for summary relief. As we conclude that Petitioners lack standing, their remaining substantive challenges to the Board's order need not be addressed.

 Preliminarily, we note that we have jurisdiction over this appeal by virtue of Section 1204 of the Gaming Act, which provides as follows:

§ 1204. Licensed gaming entity application appeals from board

The Supreme Court of Pennsylvania shall be vested with exclusive appellate jurisdiction to consider appeals of any final order, determination or decision of the board involving the approval, issuance, denial or conditioning of a slot machine license. Notwithstanding the provisions of 2 Pa. C.S. Ch. 7 Subch. A (relating to judicial review of Commonwealth agency action) and 42 Pa.C.S. § 763 (relating to direct appeals from government agencies), the Supreme Court shall affirm all final orders, determinations or decisions of the board involving the approval, issuance, denial or conditioning of a slot machine license unless it shall find that the board committed an error of law or that the order, determination or decision of the board was arbitrary and there was a capricious disregard of the evidence.

4 Pa.C.S. § 1204.[2] We note that there is no applicable standard of review as the Board made no adjudication regarding Petitioners' standing to appeal. Such issue is before us for

---

**2.** The Board summarily asserts that we lack jurisdiction over this appeal because Petitioners lack standing. This contention fails because the question of standing is distinct from that of subject matter jurisdiction. *Payne v. Commonwealth of Pennsylvania*, 582 Pa. 375, 871 A.2d 795, 795 n. 5 (2005).

the first time in this proceeding and is a question of law. Accordingly, our scope of review of the standing issue is plenary. *In re Hickson*, 573 Pa. 127, 821 A.2d 1238, 1242 (2003).

■■ As asserted in the petition for review, Petitioners are four individuals [3] and four civic associations who oppose the granting of Category 2 slot machine licenses to PEDP and HSP.[4] Collectively, they argue that they have been aggrieved

3. The individual Petitioners are Paul Neuwirth, Rita Gaudet de Vecchis, Barbara Seiple, and Kathleen McGrann, all of whom reside in Philadelphia.

4. Petitioners have filed an application to lodge and an application to file a second application to lodge in which they request that we rely not only on the allegations set forth in their petition for review, but also on information outside the record in the form of attached exhibits including affidavits of the individual Petitioners relating to the standing issue and various other documents relating to the substantive challenges to the Board's order. Petitioners assert that it is necessary for our Court to consider this information to understand the issues raised in their brief.

The Board opposes the application to lodge. It argues that it would be improper for the Court to consider evidence that was not presented to the Board and weigh that evidence to determine if the Court would reach a different conclusion. It relies on Pa.R.A.P.1951(a), which provides that where the questions raised by a petition for review may be determined by the court in whole or in part upon the record before the government unit, the record shall consist of: (1) the order or other determination of the government unit sought to be reviewed; (2) the findings or report on which such order or determination is based; and, (3) the pleadings, evidence and proceedings before the government unit. Intervenors HSP and PEDP join in the Board's opposition to the application to lodge. They maintain that Petitioners lack standing to appeal and therefore should not be permitted to supplement the record on appeal with irrelevant information. The Intervenors cite *Anam v. Workmen's Compensation Appeal Board*, 113 Pa.Cmwlth. 483, 537 A.2d 932, 934 (1988), for the proposition that "when an appellate court is petitioned to review an administrative agency decision, it may not consider matters not made part of the record before the administrative agency." The Intervenors emphasize that Petitioners should not be permitted to lodge documents due to perceived deficiencies in the record resulting from their own failure to intervene in the proceedings before the Board.

Because we agree with the Board and the Intervenors that the documents Petitioners seek to lodge were not presented to the Board and are irrelevant to our determination of standing, we shall deny the application to lodge.

Intervenor PEDP has filed an application to strike portions of the reproduced record not part of the certified record. Therein, it argues

by the Board's order and therefore have standing to appeal. None of the Petitioners intervened in the proceedings before the Board, although some Petitioners participated in the proceedings as described *infra*. The individual Petitioners allege that they have a direct, substantial, and immediate interest in the matter because the value of their residences will be adversely affected by the casino sites; noise, crime, and traffic will increase; and family life will be disrupted by compulsive gambling, suicides, and higher divorce rates. They further assert that the gaming facilities will cause neighborhood businesses to fail and rehabilitation of old homes and the building of new homes to cease.

Petitioner Society Hill Civic Association ("Society Hill") maintains that it has standing to appeal because it participated in the slots parlor application process implemented by the Board by testifying at public input hearings as to the negative effects the community would suffer if the applications were granted including, increased traffic, crime, and excessive numbers of people coming into an 18th Century neighborhood that is not designed to handle the overflow. Society Hill asserts that it also participated with other community groups to finance a professional traffic report regarding PEDP's proposed facility.

Petitioner Queen Village Neighbors Association ("Queen Village") asserts standing based on the fact that it has been recognized as the official representative of the residents of Queen Village and has various committees to deal with issues that affect the lives of its residents. The southeastern border of Queen Village is two blocks away from the proposed PEDP casino site. Queen Village participated in the proceedings before the Board in the same manner as did Society Hill and offered the same reasons in opposition to the license applications.

that Petitioners have improperly included in their reproduced record materials which are subject to their application to lodge. As we are not addressing the merits of Petitioners' issues due to their lack of standing, PEDP's application to strike portions of Petitioners' reproduced record shall be dismissed as moot.

Petitioner Pennsport Civic Association ("Pennsport") serves nearly one thousand individuals residing within an approximate half-mile radius of the PEDP casino site. Pennsport participated in the public input hearings by testifying to the same negative effects as set forth by Society Hill. It also contributed funds to finance the professional traffic report relating to the proposed gaming site. Pennsport asserts that its citizens will bear the brunt of any consequences resulting from changes in traffic patterns, which are necessary to make the PEDP project viable. It concludes that it therefore has standing to appeal the Board's order.

The final Petitioner, Whitman Council, Inc., protects the interests of individuals residing in the neighborhood of Whitman, also located in Philadelphia. It alleges that it has a direct, substantial, and immediate interest in the Board's order granting the application for the slot machine license for the same reasons offered by the other organizations.

In support of their argument that they have standing to appeal the Board's order of licensure, Petitioners rely on Section 702 of the Administrative Agency Law, which provides as follows:

§ 702 Appeals

Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa.C.S. § 702. Petitioners maintain that according to Section 701 of the Administrative Agency Law,[5] Section 702 applies to appeals from *all* Commonwealth agencies and does not require party status to challenge actions of an administrative agency. They argue that the Gaming Act is silent as to

5. Section 701(a) states that except as provided in subsection (b) (which is inapplicable here), "this subchapter shall apply to all Commonwealth agencies regardless of the fact that a statute expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final or conclusive, or shall not be subject to review." 2 Pa.C.S. § 701(a).

standing and that there are no provisions which render Section 702 inapplicable to appeals from the Board. Petitioners assert that Section 1204 of the Gaming Act does not involve standing, but rather vests our Court with appellate jurisdiction and sets forth our standard of review. They contend that Section 1903(b) of the Gaming Act, which repeals acts insofar that they are inconsistent with the Gaming Act, is therefore not implicated. Petitioners conclude that because there is no express language modifying the Administrative Agency Law, Section 702 applies here.[6] They reiterate that they established their "direct interest" by demonstrating the various ways they will be harmed by the granting of the licensing applications.

In addition to standing under the Administrative Agency Law, Petitioners further argue that case law establishes their standing due to the fact that their proximity to the proposed facility gives them a direct interest in the subject matter. They cite *Application of Gismondi Liquor License*, 199 Pa.Super. 619, 186 A.2d 448 (1962) and *Cashdollar v. Commonwealth of Pennsylvania*, 143 Pa.Cmwlth. 650, 600 A.2d 646 (1991), for the general proposition that an appellant whose proximity to a licensed entity will cause him or her to experience adverse effects from that entity has standing to challenge the administrative order granting the entity's license.

As a starting point for our analysis, we examine our recent decision in *Citizens*. In *Citizens*, an individual and an organization that opposed the use of gaming revenues to subsidize slot machine licenses filed a petition for review of the Board's issuance of a conditional slot machine license to Presque Isle Downs, Inc. ("Presque Isle") in Erie, Pennsylvania. Presque Isle intervened in the proceedings and applied for summary relief based on the petitioners' lack of standing. The individual petitioner in *Citizens* was a resident of Erie County, a property owner, and a taxpayer; the organizational petitioner was an unincorporated association. The petitioners initially

---

**6.** Petitioners rely on 2 Pa.C.S. § 106, which provides that "[n]o subsequent statute shall be held to supersede or modify the provisions of this title except to the extent that such statute shall do so expressly." *Id.*

asserted that they were directly aggrieved by the issuance of the conditional license, but later acknowledged the lack of a direct interest and instead asserted taxpayer standing. As in the instant case, the *Citizens'* petitioners did not intervene in the proceedings before the Board.

Our Court ruled that the petitioners in *Citizens* did not have standing to appeal the Board's order because: (1) they did not pursue intervention to achieve party status in the administrative proceedings; and (2) they did not allege an interest that is direct. *See* Per Curiam Order dated February 7, 2007 at 90 WM 2006. In our opinion following entry of our per curiam order, we noted that generally, standing to appeal requires both status as a party and aggrievement. 916 A.2d at 628 (citing Pa.R.A.P. 501 (providing that "[e]xcept where the right to appeal is enlarged by statute, any party who is aggrieved by an appealable order ... may appeal therefrom")). We recognized that Section 702 of the Administrative Agency Law did not require party status, but concluded that because the petitioners lacked a direct interest in the licensing proceeding, Section 702 did not support their appeal effort.[7]

Because the petitioners in *Citizens* essentially conceded a lack of a direct interest, we went on to examine whether taxpayer standing can be invoked as a basis to support a non-party appeal of a licensing decision, absent intervention in the administrative proceedings. While emphasizing that Board regulations set forth a specific procedure for permissive intervention in 58 Pa.Code § 441.19(y), we stated:

> We agree with the Board and Intervenor that permitting an appeal based on taxpayer standing alone absent intervention in the administrative proceedings is inconsistent with orderly rules of procedure and would foster untenable impracticalities in terms of the development of an essential record for consideration on appeal.

7. We found that in light of the fact that the petitioners did not establish a direct interest in the licensure proceeding, it was not necessary to fully resolve the Board's argument that the Administrative Agency Law is inapplicable to proceedings before it. *Id.* at n. 2. We noted, however, that the Gaming Act contains some cross-references to the Administrative Agency Law. *Id.*

916 A.2d at 629. We reasoned that because the Legislature conditioned the issuance of slot machine licenses upon the finality of the licensing proceedings, it was unlikely that the General Assembly intended to authorize non-party appeals by those lacking a direct interest. *Id.* Finally, the Court noted that the petitioners' right to appeal under Article V, Section 9 of the Pennsylvania Constitution was effectuated through compliance with reasonable, orderly procedures. *Id.*

Petitioners attempt to distinguish *Citizens.* First, they contend that unlike the petitioners in *Citizens,* they do not rely on taxpayer standing, but rather on their direct interest in the proceeding arising from the alleged harm that they would suffer as a result of the Board's licensure order. They conclude that because of such direct interest, Section 702 applies, which does not require party status to appeal. Second, as noted, they assert a separate basis for standing arising from the proximity of the proposed casino sites to the residences of the individual Petitioners and those served by the remaining civic association Petitioners. Finally, Petitioners maintain that they were unaware of the intervention procedures set forth at 58 Pa.Code § 441.19(y) and that their failure to intervene was not a strategic tactic as occurred in *Citizens.*

The Board, along with Intervenors HSP and PEDP, argue that Petitioners lack standing for the same reasons as the petitioners in *Citizens, i.e.,* due to their failure to intervene in the proceedings before the Board and their failure to assert a direct interest. They argue that because Petitioners did not utilize the established intervention procedure, they waived any right to appeal. The Board further contends that intervention was required because Section 702 of the Administrative Agency Law is inapplicable to appeals from adjudications of the Board as such direct appeals to this Court are expressly governed by Section 1204 of the Gaming Act and not Title 42. It further relies on that portion of Section 1204 which states *"Notwithstanding the provisions of 2 Pa.C.S. Ch. 7 Subch. A (relating to judicial review of Commonwealth agency action) and 42 Pa.C.S. § 763 (relating to direct appeals from government agencies),"* 2 Pa.C.S. § 1204 (emphasis added). The

Board maintains that the General Assembly's use of the "notwithstanding" language in Section 1204 supersedes application of Section 702 of the Administrative Agency Law. Finally, the Board contends that simply living in the vicinity of a proposed casino does not create a direct interest which is substantial and immediate, especially when the harm alleged is entirely speculative.

■ We first examine the applicability of Section 702 of the Administrative Agency Law. This is a matter of statutory construction under the Statutory Construction Act of 1972. 1 Pa.C.S. § 1501 *et seq*. We agree with the Board and Intervenors that Section 702 does not apply to appeals from determinations of the Board involving the approval or conditioning of a slot machine license. We rely on the plain language of Section 702, which provides that it applies to the right to appeal from an adjudication of a Commonwealth agency "to the court vested with jurisdiction of such appeals *by or pursuant to Title 42 (relating to judiciary and judicial procedure)*." 2 Pa.C.S. § 702 (emphasis added). *See* 1 Pa.C.S. § 1921(b) (providing that when the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit). The instant matter does not involve an appeal pursuant to Title 42, but rather an appeal pursuant to Section 1204 of the Gaming Act. Thus, Section 702, on its face, is inapplicable here.[8]

8. With respect, it appears that the dissenting opinion fails to grasp the basis for our holding that Section 702 is inapplicable to the instant case. We have *not* adopted the Board's argument that Section 1204 or any other provision of the Gaming Act supersedes or modifies the provisions of Section 702 of the Administrative Agency Law. The dissenting opinion correctly notes that Section 1204 does *not* speak to standing to appeal and we have not held to the contrary. *What renders Section 702 inapplicable here is the plain language of 702 itself.* Simply put, and as noted *supra*, the text of Section 702 provides that such provision applies to appeals pursuant to Title 42 and this appeal is pursuant to Section 1204 of the Gaming Act. Our holding is limited to the applicability of Section 702 and does not address the general application of the Administrative Agency Law in a proceeding before the Board. Further, our holding in no way conflicts with our decision in *Citizens*, which did not address the applicability of Section 702, but instead found that such provision did not support the petitioners' appeal effort because they lacked a direct interest in the licensing

Likewise, Petitioners' reliance on case law involving Section 702 is misplaced.[9] As Section 702 is not applicable to the standing issue presented, the general requirement of both party status and aggrievement as set forth in Pa.R.A.P. 501 therefore applies. *See also* 58 Pa.Code § 494.11(a) (providing that "[a] *party* may appeal final orders of the Board in accordance with the act . . . .") (emphasis added).

This conclusion is in accord with our finding in *Citizens* that permitting an appeal absent intervention in the proceedings before the Board is "inconsistent with orderly rules of procedure and would foster untenable impracticalities in terms of the development of an essential record for consideration on appeal." 916 A.2d at 629. Our Legislature recognized the time-sensitive nature of implementing the Gaming Act by assuring a streamlined direct appeal process to this Court. Allowing those who did not intervene before the Board to enter the proceedings for the first time at the appellate level would frustrate such process and lead to piecemeal litigation.

We emphasize that the regulations promulgated by the Board provide an adequate opportunity for a person to achieve party status through intervention "if the person has an interest in the proceeding which is substantial, direct, and immediate and if the interest is not adequately represented in a licensing hearing." 58 Pa.Code § 441.19(y)(2); *see also, id.* at § 493.13 (Intervention). The regulations further establish a deadline and set forth a procedure to be followed by parties seeking to intervene in slot machine licensing hearings. *Id.* at

proceeding. 916 A.2d at 628. Considering that we stated in *Citizens* that "Petitioners lacked standing to appeal because they failed to intervene in the administrative proceedings before the Board," *id.* at 627, any inconsistency with *Citizens* arises from the *dissent's* position that party or intervenor status is not required to appeal the Board's licensure order.

9. Petitioners' reliance on *Gismondi* and *Cashdollar* is improper. In *Gismondi*, the finding of standing was based primarily on a statute which conferred standing upon those who resided within a certain number of feet of a licensed establishment. To the contrary, the General Assembly has not conferred standing upon those living within certain proximity of a gaming facility. In *Cashdollar*, the parties asserted taxpayer standing, which our Court rejected as a basis for standing to appeal an order of the Board in *Citizens*.

§ 441.19(y)(3)-(4).[10] We reject Petitioners' claim that they need not comply with such procedure to satisfy the requirement of party status because they were unaware of it. Under the circumstances presented, ignorance of the requirements of the law is not an acceptable excuse for non-compliance. Further, Petitioners' attempt to distinguish *Citizens* on the ground that the petitioners there *chose* not to intervene is unpersuasive. The salient fact in *Citizens* was simply that the petitioners did *not* intervene when they had the opportunity to do so.[11] Moreover, the fact that Petitioners participated at the hearing without intervening does not afford them standing. *See Stanbro v. Zoning Hearing Board of Cranberry Township*, 130 Pa.Cmwlth. 84, 566 A.2d 1285, 1287 (1989) (holding that participation at the trial court level by filing a brief and participating in oral argument without intervention is insufficient to be accorded standing to appeal).

Having concluded that Petitioners lack standing to appeal because they were not a party to the proceedings before the Board and did not intervene, an examination of whether Petitioners have a direct, substantial, and immediate interest in the Board's licensure order is unnecessary.

■ The second issue for review is whether Petitioners have standing to challenge the constitutionality of Section 1204 of the Gaming Act pursuant to Section 1904, which provides that our Court "shall have exclusive jurisdiction to hear any challenge to or to render a declaratory judgment concerning the constitutionality of this part." 4 Pa.C.S. § 1904. We recognize that the issue of whether Petitioners have standing to raise such a constitutional challenge is distinct from the

10. Specifically, subsection (y)(4) provides that petitions to intervene must set out clearly and concisely the facts demonstrating the nature of the alleged right or interest of the petitioner, the grounds of the proposed intervention, the position of the petitioner in the proceeding, and a copy of the written statements to be offered. Subsection (y)(5) further allows for an answer to the petition to intervene to be filed. *Id.* at § 441.19(y)(5).

11. We need not address the circumstances where a party seeks leave to intervene and the Board, in its discretion, denies such request. Such factual scenario is not presented in the instant case.

issue of whether they have standing to appeal the Board's order. As noted, pursuant to Section 1904, we are acting on Petitioners' constitutional claim in our original and exclusive jurisdiction.[12] The basis for Petitioners' substantive claim is that Section 1204 deprives our Court of its power to review agency action in violation of Article V, Section 2 of the Pennsylvania Constitution, which vests the "supreme judicial power of the Commonwealth" in this Court.[13]

■ The core concept in any standing analysis is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 280 (1975) (plurality).

■ It is well-established that an individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing. *In re Hickson*, 821 A.2d at 1243; *City of Philadelphia [v. Commonwealth of Pennsylvania]*, 575 Pa. 542, 838 A.2d [566] at 577. An interest is "substantial" if it is an interest in the resolution of the challenge which "surpasses the common interest of all citizens in procuring obedience to the law." *In re Hickson*, 821 A.2d at 1243. Likewise, a "direct" interest mandates a showing that the matter complained of "caused harm to the party's interest," *id.*, *i.e.*, a causal connection between the harm and the violation of law. *City of Philadelphia*, 838 A.2d at 577. Finally, an interest is "immediate" if the causal connection is not remote or speculative. *Id.*; see *Kuropatwa v. State Farm Ins. Co.*, 554 Pa. 456, 721 A.2d 1067, 1069 (1998).

**12.** We clarify that Section 1904 does *not* speak to the *standing* of a party to raise a constitutional challenge to the Gaming Act, but rather establishes this Court's exclusive jurisdiction for such challenges when properly raised.

**13.** Clearly, our decision is not addressing the merits of the challenge to Section 1204 because, as noted *infra*, we find that Petitioners lack standing to raise such a claim.

*Pittsburgh Palisades Park v. Commonwealth of Pennsylvania*, 585 Pa. 196, 888 A.2d 655, 660 (2005).

Petitioners' sole contention in support of their assertion of standing is that they have been negatively impacted in some real and direct fashion by the standard of review set forth in Section 1204 of the Gaming Act because such standard makes it more difficult for them to overturn the Board's order and adjudication. This claim is unpersuasive. Because Petitioners lack standing to appeal, Section 1204's standard of review will never be applied to their claims. As Petitioners are not harmed by the standard of review set forth in Section 1204, they have no direct interest whatsoever in the constitutional challenge made thereto. Because there is no causal connection between any harm and the violation of law, Petitioners' interest is not immediate. Finally, Petitioners' interest does not surpass the common interest of all citizens in procuring obedience to the law and therefore is not substantial. Accordingly, they lack standing to raise the claim.

In summary, because Petitioners have failed to intervene when procedures for intervention were available, we hold that they lack standing to appeal the Board's order granting conditional licenses to PEDP and HSP for Category 2 slot machine licenses in the City of Philadelphia. Petitioners further lack standing to challenge the constitutionality of Section 1204 of the Gaming Act because they have no direct, substantial, and immediate interest in such claim.

Having concluded that Petitioners lack standing, we: (1) grant HSP's application for summary relief; (2) dismiss Petitioners' petition for review; (3) deny Petitioners' request for confidential documents that comprise the record;[14] (4) deny Petitioners' application to lodge and their application for leave to file a second application to lodge; and (5) dismiss as moot PEDP's application to strike portions of Petitioners' reproduced record.

**14.** By order dated March 30, 2007, we deferred disposition of Petitioners' request in this regard pending resolution of the standing issue.

PER CURIAM.

## ORDER

**AND NOW,** this 4th day of June, 2007, the Application for Summary Relief filed on behalf of HSP Gaming, LP, is granted. Petitioners' Petition for Review is dismissed. Petitioner's request for confidential documents identified in the Certified List of All Documents that Comprise the Certified Record in Accordance With Pa.R.A.P.1952(b) is denied. Petitioners' Application to Lodge and their Application for Leave to File a Second Application to Lodge are denied. The Application to Strike Portions of Petitioners' Reproduced Record filed on behalf of Philadelphia Entertainment and Development Partners, LP is dismissed as moot.

Justice SAYLOR files a dissenting opinion joined by Justice CASTILLE.

SAYLOR, Justice, dissenting.

I respectfully differ with the majority's conclusion that Section 702 of the Administrative Agency Law has no application in the present setting. *See* Majority Opinion, at 182. Rather, I agree with Petitioners' position that Section 702 and the other provisions of the associated subchapter apply, in the first instance, to all Commonwealth agencies. *See* 2 Pa.C.S. § 701 ("[T]his subchapter shall apply to all Commonwealth agencies[.]").[1] Section 1204 of the Gaming Act, which invests this Court with original and exclusive appellate jurisdiction relative to appeals pertaining to the issuance of gaming licenses, supplants only the contrary portion of Section 702 which provides for appeals to the court having jurisdiction pursuant to the Judicial Code, 42 Pa.C.S., Title 42. *See* 4 Pa.C.S. § 1204. As Petitioners argue at length, nothing in Section 1204 of the Gaming Act displaces the provisions of Section 702 that establish the criteria by which standing to appeal from agency decisions is determined. *See id.; accord Citizens*

---

1. In the context of the Administrative Agency Law, the term "Commonwealth agency" includes independent agencies. *See* 2 Pa.C.S. § 101.

*Against Gambling Subsidies, Inc. v. Pennsylvania Gaming Control Bd.*, 591 Pa. 312, 320 n. 2, 916 A.2d 624, 628 n. 2 (2007) (explaining that the General Assembly's various references within the Gaming Act specifically superseding application of the Administrative Agency Law in discrete matters "suggest [ ] that [the Administrative Agency Law's] requirements may otherwise apply to other aspects of administrative proceedings under the Gaming Act where those requirements are not specifically overridden").

I also agree with Petitioners that Section 1204's silence with regard to standing means that Section 702 applies, not merely by default, but also as a matter of positive legislative mandate under Section 106 of Title 2 of the Pennsylvania Consolidated Statutes (Administrative Law and Procedure), 2 Pa.C.S. § 106 ("No subsequent statute shall be held to supersede or modify the provisions of this title except to the extent that such statute shall do so expressly.").[2] Again, as Petitioners stress, no language that would expressly supersede or modify Section 702's formulation for standing to appeal an administrative agency determination appears within the Gaming Act.

Since I would hold that Section 702 applies, I would also apply the interpretation of Section 702 in *Application of El Rancho Grande, Inc.*, 496 Pa. 496, 437 A.2d 1150 (1981), pursuant to which party (or intervenor) status was not required to support an administrative appeal by one possessed with a direct interest in the subject matter of the administrative proceeding. *See id.* at 502, 437 A.2d at 1153. Furthermore, in light of Petitioners' allegations concerning their (or their members') close geographic proximity to the gaming

**2.** I recognize that Section 1201.1 of the Gaming Act, addressing the applicability of other statutes to the Gaming Control Board, does not specifically indicate that the Administrative Agency Law applies to the Board. *See* 4 Pa.C.S. § 1201.1. However, while providing for the applicability of various enumerated statutes to the Board, this section is not phrased in exclusive terms. Therefore, I do not believe that it expressly supersedes the Administrative Agency Law as contemplated under section 106 of Title 2, 2 Pa.C.S. § 106 ("No subsequent statute shall be held to supersede or modify the provisions of this title[, *i.e.*, Administrative Law and Procedure,] except to the extent that such statute shall do so expressly."), in order to warrant a departure.

facilities benefiting from the challenged licenses, I believe they are, at the very least, entitled to a factual determination concerning whether such proximity invests them with a direct interest.[3]

As I am unable to support the dismissal of the appellate and original jurisdiction matters based on the reasoning embodied in the majority opinion, I respectfully dissent.

Justice CASTILLE joins this dissenting opinion.

3. The present circumstances are readily distinguishable from those prevailing in *Citizens Against Gambling Subsidies.* There, the petitioners did not preserve a claim of a direct interest in the subject matter of the administrative proceeding, but rather, asserted standing by virtue of more diffuse financial interests arising out of a petitioner's status as a taxpayer and property owner in the county in which a gaming facility was to be located. *See Citizens Against Gambling Subsidies,* 591 Pa. at 319–20, 916 A.2d at 628.