# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Robert L. Holbrook; Abd'allah Lateef; Terrance Lewis; Margaret Robertson; National Association for the Advancement of Colored People; NAACP Pennsylvania State Conference; Philadelphia Branch of the NAACP; University of Pennsylvania Chapter of the NAACP; Progressive NAACP; and University of Pennsylvania Chapter of Beyond Arrest: Rethinking Systematic-Oppression, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Petitioners | : |
| | : |
| v. | : No. 184 M.D. 2020 <br> : Argued: November 9, 2020 |
| Commonwealth of Pennsylvania; Thomas W. Wolf, in his official capacity as Governor of Pennsylvania; and Kathy Boockvar, in her official capacity as Secretary of the Commonwealth of Pennsylvania, | : <br> : <br> : <br> : <br> : <br> : |
| Respondents | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  January 14, 2021

---

[1]This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

Before the Court are the preliminary objections (POs)[2] of the Commonwealth of Pennsylvania (Commonwealth), Thomas W. Wolf, in his official capacity as Governor of Pennsylvania (Governor), and Kathy Boockvar, in her official capacity as Secretary of the Commonwealth of Pennsylvania (Secretary) (collectively, Respondents) to the petition for review seeking declaratory and injunctive relief that was filed in our original jurisdiction pursuant to the Declaratory Judgments Act (DJA)[3] by Robert L. Holbrook (Holbrook), Abd'allah Lateef (Lateef), Terrance Lewis (Lewis), Margaret Robertson (Robertson) (collectively, Elector Petitioners), National Association for the Advancement of Colored People, NAACP Pennsylvania State Conference, Philadelphia Branch of the NAACP, University of Pennsylvania Chapter of the of NAACP, Progressive NAACP, and University of Pennsylvania Chapter of Beyond Arrest (collectively, Organization Petitioners). We sustain the POs and dismiss the petition for review.

On February 27, 2020, the petition for review was filed in which Elector Petitioners and Organization Petitioners contest the manner in which state legislative districts for the Pennsylvania General Assembly are determined pursuant to Article

---

[2] As this Court has explained:

> "In ruling on preliminary objections, the courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts." "However, we 'are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion.'" "To sustain preliminary objections, 'it must appear with certainty that the law will permit no recovery' and '[a]ny doubt must be resolved in favor of the non-moving party.'"

*Brouillette v. Wolf*, 213 A.3d 341, 350 n.9 (2019) (citations omitted).

[3] 42 Pa. C.S. §§7531-7541.

2

II of the Pennsylvania Constitution.[4]  Specifically, Elector Petitioners and Organization Petitioners assert that the apportionment for the legislative districts

---

[4] Article II, Section 16 of the Pennsylvania Constitution states, in relevant part:  "The Commonwealth shall be divided into fifty senatorial and two hundred three representative districts, which shall be composed of compact and contiguous territory as nearly equal in population as practicable.  Each senatorial district shall elect one Senator, and each representative district one Representative."  Pa. Const. art. II, §16.  In turn, Article II, Section 17 provides, in pertinent part:

> (a)  In each year following the year of the Federal decennial census, a Legislative Reapportionment Commission shall be constituted for the purpose of reapportioning the Commonwealth.  The commission shall act by a majority of its entire membership.

> (b)  The commission shall consist of five members:  four of whom shall be the majority and minority leaders of both the Senate and the House of Representatives, or deputies appointed by each of them, and a chairman selected as hereinafter provided.  No later than 60 days following the official reporting of the Federal decennial census as required by Federal law, the four members shall be certified by the President pro tempore of the Senate and the Speaker of the House of Representatives to the elections officer of the Commonwealth who under law shall have supervision over elections.

> The four members within 45 days after their certification shall select the fifth member, who shall serve as chairman of the commission, and shall immediately certify his name to such elections officer. . . .

> If the four members fail to select the fifth member within the time prescribed, a majority of the entire membership of the Supreme Court within 30 days thereafter shall appoint the chairman as aforesaid and certify his appointment to such elections officer. . . .

> (c)  No later than ninety days after either the commission has been duly certified or the population data for the Commonwealth as determined by the Federal decennial census are available, whichever is later in time, the commission shall file a preliminary reapportionment plan with such elections officer.

**(Footnote continued on next page…)**

The commission shall have thirty days after filing the preliminary plan to make corrections in the plan.

Any person aggrieved by the preliminary plan shall have the same thirty-day period to file exceptions with the commission in which case the commission shall have thirty days after the date the exceptions were filed to prepare and file with such elections officer a revised reapportionment plan. If no exceptions are filed within thirty days, or if filed and acted upon, the commission's plan shall be final and have the force of law.

(d) Any aggrieved person may file an appeal from the final plan directly to the Supreme Court within thirty days after the filing thereof. If the appellant establishes that the final plan is contrary to law, the Supreme Court shall issue an order remanding the plan to the commission and directing the commission to reapportion the Commonwealth in a manner not inconsistent with such order.

(e) When the Supreme Court has finally decided an appeal or when the last day for filing an appeal has passed with no appeal taken, the reapportionment plan shall have the force of law and the districts therein provided shall be used thereafter in elections to the General Assembly until the next reapportionment as required under this section seventeen.

* * *

(h) If a preliminary, revised or final reapportionment plan is not filed by the commission within the time prescribed by this section, unless the time be extended by the Supreme Court for cause shown, the Supreme Court shall immediately proceed on its own motion to reapportion the Commonwealth.

Pa. Const. art. II, §17 (a)-(e), (h). *See also* Section 725(1) of the Judicial Code, 42 Pa. C.S. §725(1) ("The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the . . . Legislative Reapportionment Commission.").

4

violates the Equal Elections Clause of Article I, Section 5 of the Pennsylvania Constitution,[5] the Equal Population Mandate of Article II, Section 16 of the Pennsylvania Constitution, and Section 1302(a)(1)(iii) of the statute known as the Voter Registration Act,[6] because prisoners housed in Pennsylvania State Correctional Institutions are counted as residents of the legislative districts in which they are incarcerated rather than the legislative districts in which they resided prior to incarceration. Elector Petitioners and Organization Petitioners claim that this "prison-based gerrymandering" artificially inflates the voting power of rural electors in the legislative districts in which the Correctional Institutions are located, and artificially deflates the voting power of urban electors in the legislative districts in which fewer Correctional Institutions are located in violation of these constitutional and statutory provisions. Based on the foregoing, Elector Petitioners and Organization Petitioners seek a declaration that the 2012 legislative reapportionment plan (2012 Plan) promulgated by the Legislative Reapportionment Commission (Commission) under Article II, Section 17 is unconstitutional and illegal and ask this Court to permanently enjoin Respondents from enforcing the 2012 Plan and any future reapportionment plan by the Commission that counts incarcerated people in the same manner as the 2012 Plan.

---

[5] Pa. Const. art. I, §5. Article I, Section 5 states: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

[6] 25 Pa. C.S. §1302(a)(1)(iii). Section 1302(a)(1)(iii) provides: "For the purpose of registration and voting, no individual shall be deemed to have gained a residence by reason of presence or lost a residence by reason of absence in any of the following circumstances: . . . Being in an institution at public expense."

In the POs,[7] Respondents assert: (1) the Governor, the Secretary, and the Commonwealth are not proper parties to this action; (2) the Commission is an indispensable party to this action and Elector Petitioners' and Organization Petitioners' failure to name the Commission and its members as respondents deprives this Court of subject matter jurisdiction; (3) the allegation that the Governor and the Secretary are responsible for "faithfully executing" and "carrying out" the laws outlined in the petition for review are general, non-descriptive allegations of purported executive duties and not allegations of state action, and the conclusory allegation that the Commonwealth has "adopted, maintained and enforced" the 2012 Plan is incorrect as Article II, Section 17 specifies that the Commission adopts the plan and the Supreme Court "maintains" the plan by determining whether a plan "shall have the force of law" until the next reapportionment cycle; (4) all Petitioners' request for a permanent, mandatory injunction requiring Respondents to reapportion the legislative districts prior to the next reapportionment cycle is barred by sovereign immunity; (5) Elector Petitioners' and Organization Petitioners' challenge to the 2012 Plan was filed more than 30 days after the Commission's June 8, 2012 filing

---

[7] Pa. R.C.P. No. 1028(a)(1), (4), and (5) states:

> (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
> (1) lack of jurisdiction over the subject matter of the action or the person of the defendant;
>
> * * *
>
> (4) legal insufficiency of a pleading (demurrer);
>
> (5) lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action[.]

of the Plan in violation of Article II, Section 17(d)'s 30-day statute of repose; (6) Elector Petitioners and Organization Petitioners lack standing to challenge the legality of any future apportionment plan because their claims are not ripe, the extraordinarily complex factual issues underlying a reapportionment is not well-suited to a declaratory judgment action seeking injunctive relief, and the named parties herein are not sufficiently adverse because the Commission apportions the legislative districts and Respondents have no say in the counting methods used for apportionment; and (7) this Court lacks jurisdiction over the objections to the 2012 Plan because Article II, Section 17(d) expressly states that any party aggrieved by a final apportionment plan must file an appeal with the Supreme Court.

As a preliminary matter, as this Court has explained:

> Petitions for declaratory judgments are governed by the provisions of the [DJA]. Although the [DJA] is to be liberally construed, one limitation on a court's ability to issue a declaratory judgment is that the issues involved must be ripe for judicial determination, meaning that there must be the presence of an actual case or controversy. Thus, the [DJA] requires a petition praying for declaratory relief to state an actual controversy between the petitioner and the named respondent.

> Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction. As the Pennsylvania Supreme Court has stated:

> > The presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy are

7

essential to the granting of relief by way of declaratory judgment. . . .

Only where there is a real controversy may a party obtain a declaratory judgment.

A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.

*Brouillette v. Wolf*, 213 A.3d 341, 357-58 (Pa. Cmwlth. 2019) (citations omitted). "[A]n action seeking declaratory judgment is not an optional substitute for established or available remedies and should not be granted where a more appropriate remedy is available." *Pittsburgh Palisades Park, LLC v. Pennsylvania State Horse Racing Commission*, 844 A.2d 62, 67 (Pa. Cmwlth. 2004) (citation omitted).

Upon review, it is clear that the POs should be sustained, and that the petition for review filed in this matter should be dismissed. First, assuming that the factual allegations in the petition are true, as we must, it is clear that the Commonwealth is not a proper party to this action. As this Court has explained:

To this end, Pa. R.C.P. No. 2102(a)(2) provides that, while "[a]n action by the Commonwealth" may be brought in the name of "the Commonwealth of Pennsylvania," an action against a "Commonwealth agency or party" generally may not. Citing Article I, Section 11 of the Pennsylvania Constitution[8] and 1

---

[8] Pa. Const. art. I, §11. Article I, Section 11 states, in relevant part: "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

8

Pa. C.S. §2310,[9] the Official Note to Pa. R.C.P. No. 2102 recognizes that there is "only" one exception: Where there is a cause of action against the Commonwealth generally and an express "right of action [against the Commonwealth generally] has been authorized by statute." *See also Finn v. Rendell*, 990 A.2d 100, 105 (Pa. Cmwlth. 2010) ("The Court also notes that the Commonwealth government and its various agencies and officers are separate entities and that 'the Commonwealth of Pennsylvania, itself, which is clearly not a Commonwealth agency, still enjoys absolute immunity pursuant to 1 Pa. C.S. §2310.'") (citation omitted and emphasis in original).

*Brouillette*, 213 A.3d at 356 (emphasis omitted). Because Elector Petitioners and Organization Petitioners[10] have not cited a specific statutory provision waiving the

---

[9] Section 2310 of Title 1 of the Pennsylvania Consolidated Statutes provides:

Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

[10] To the extent that Respondents challenge Organization Petitioners' standing, that PO should be sustained, and Organization Petitioners should be dismissed as a party petitioner in this action. *See, e.g.*, *League of Women Voters of Pennsylvania v. The Commonwealth of Pennsylvania* (Pa. Cmwlth., No. 261 M.D. 2017, filed November 13, 2017) (order sustaining preliminary objection challenging standing of League of Women Voters of Pennsylvania as a party petitioner in an action seeking the reapportionment of federal congressional districts, *citing* "*Erfer v. Commonwealth*, 794 A.2d 325, 330 (Pa. 2002) (holding that entity not authorized by law to exercise right to vote in Commonwealth lacks standing to file political gerrymandering claims)"). *See also League of Women Voters v. Commonwealth of Pennsylvania*, 178 A.3d 737, 741 n.3 (Pa.
**(Footnote continued on next page…)**

9

Commonwealth's immunity from suit in this matter, this PO should be sustained, and the Commonwealth should be dismissed as a party respondent in this action. *See, e.g.*, *League of Women Voters v. The Commonwealth of Pennsylvania* (Pa. Cmwlth., No. 261 M.D. 2017, filed October 4, 2017) (order dismissing Respondent Commonwealth of Pennsylvania from an action seeking the reapportionment of federal congressional districts).[11] *See also Brouillette*, 213 A.3d at 356 n.16 ("[A]ny meaningful declaratory relief that this Court could provide must be directed to the actions of some identifiable Commonwealth party that violated some identifiable constitutional or statutory provision rather than to the Commonwealth generally.").

With respect to the misjoinder of the Governor and the Secretary, it must be noted that the drafting of state legislative districts involves a different process from that used to determine federal congressional districts. As the Supreme Court has recognized, "Pennsylvania's congressional districts are drawn by the state legislature as a regular statute, subject to veto by the Governor." *League of Women Voters v. Commonwealth of Pennsylvania*, 178 A.3d 737, 742 (Pa. 2018). "By contrast, the state legislative lines are drawn by [the] five-member [Commission] pursuant to the Pennsylvania Constitution. *See* Pa. Const. art. II, §17." *Id.* at 742 n.11. As a result, neither the Governor nor the Secretary had any part in the process of adopting the 2012 Plan. Rather, as outlined above, the Commission adopted the 2012 Plan and, pursuant to Article II, Section 17(e), following any direct appeal to

2018) ("On November 13, 2017, the Commonwealth Court dismissed the League of Women Voters from the case based on a lack of standing. On the presentations before us, *see* Petitioners' Brief at 41 n.5, and given our resolution of this matter, we do not revisit that decision.").

[11] *See, e.g.*, Pa. R.E. 201(b)(2) (permitting courts to take judicial notice of facts that may be "determined from sources whose accuracy cannot reasonably be questioned"); *Germantown Cab Co. v. Philadelphia Parking Authority*, 27 A.3d 280, 283 n.8 (Pa. Cmwlth. 2011) (taking judicial notice of a Supreme Court docket in a case involving a similar point of law).

the Pennsylvania Supreme Court,[12] "the [2012 Plan] shall have the force of law and the districts therein provided shall be used thereafter in elections to the General Assembly until the next reapportionment as required under this section seventeen" automatically as a matter of law.  Pa. Const. art. II, §17(e).

In the petition for review, Elector Petitioners and Organization Petitioners merely allege that the Governor "is vested with the supreme executive power of the Commonwealth of Pennsylvania and is responsible for taking care that the law of Pennsylvania be faithfully executed"; that he "is responsible for faithfully executing the Commonwealth's legislative apportionment plans"; that under Article VI, Section 3 (relating to the oath of office), he "is also responsible for enforcing and faithfully executing Article I, Section 5 and Article II, Section 16 of the Pennsylvania Constitution and has solemnly sworn an oath of office to 'support, obey and defend . . . the Constitution of this Commonwealth'"; and that he "is responsible for faithfully executing the residency standards of [Section 1302(a)(iii) of the Voter Registration Act]."  Petition for Review ¶75.

Regarding the Secretary, Elector Petitioners and Organization Petitioners merely allege that the Secretary "is the Commonwealth's highest election official and is responsible for the supervision and administration of the Commonwealth's elections and electoral process"; that, like the Governor, she "has solemnly sworn an oath of office to 'support, obey and defend . . . the Constitution of this Commonwealth,' including Article I, Section 5 and Article II, Section 16"; and that she "is the Commonwealth official most clearly responsible for carrying out Article I, Section 5's command[s]."  Petition for Review ¶76.

---

[12] *See, e.g.*, *Holt v. 2011 Legislative Reapportionment Commission*, 38 A.3d 711 (Pa. 2012) (involving an appeal of the Commission's 2012 Plan that was filed within the 30-day requirement of Article II, Section 17(d)).

11

However, as this Court has explained:

> With respect to the Department and Secretary Boockvar, we have noted that Commonwealth agencies and actors are proper parties in declaratory relief actions only when they have or claim an interest that would be affected by the declaration. [*Pennsylvania State Education Association v. Department of Education*], 516 A.2d 1308, 1310 (Pa. Cmwlth. 1986). In the present case, [p]etitioners attempt to show that [r]espondents have such an interest via three paragraphs of the petition for review. Turning first to paragraph twenty-three, [p]etitioners aver that the disputed [statute known as the Commonwealth's Judicial Change of Name Act (Act), 54 Pa. C.S. §§701-705,] is a law of the Commonwealth. However, the mere fact that the Act is a law of the Commonwealth is insufficient to state a claim against [r]espondents Boockvar and the Department of State. *See* [*1st Westco Corporation v. School District of Philadelphia*], 6 F.3d 108, 116 (3d Cir. 1993) (holding that, "If we were to allow [joinder of] Commonwealth Officials in this lawsuit based on their general obligation to enforce the laws of the Commonwealth, we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it.").

*Porter v. Commonwealth* (Pa. Cmwlth., No. 303 M.D. 2019, filed July 29, 2020), slip op. at 7-8.[13] Likewise, herein, the misjoinder POs should be sustained, and the Governor and the Secretary should be dismissed as parties to the instant action.

Moreover, and quite importantly, as outlined above, Article II, Section 17(b) provides: "The commission shall consist of five members: four of whom shall be the majority and minority leaders of both the Senate and the House of

---

[13] *See* Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may also cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

12

Representatives, or deputies appointed by each of them, and a chairman selected as hereinafter provided." Pa. Const. art. II, §17(b). With respect to the Commission that adopted the 2012 Plan, the Supreme Court outlined its composition as follows:

> As required by Section 17, a reapportionment body was constituted in 2011, the year following the federal decennial census. *See* Pa. Const. art. II, § 17(a). That body, the [Commission], consists of five members, four of whom are specifically identified by the Constitution based upon their partisan leadership roles in the General Assembly: for this reapportionment, the members are the Senate Majority Leader (Dominic Pileggi (R)), the Senate Minority Leader (Jay Costa (D)), the House Majority Leader (Mike Turzai (R)), and the House Minority Leader (Frank Dermody (D)). *See* Pa. Const. art. II, § 17(b). On February 18, 2011, the President *pro tempore* of the Pennsylvania Senate and the Speaker of the Pennsylvania House of Representatives certified these four automatic members to serve on the 2011 [Commission]. . . . On the forty-fifth day after their certification, on April 4, 2011, the legislative members announced their failure to agree on the chairman of the [Commission], leaving the task of appointment to this Court. Fifteen days later, on April 19, 2011, this Court appointed as [Commission] chairman the Honorable Stephen J. McEwen, Jr., President Judge Emeritus of the Superior Court of Pennsylvania. The Court's prompt action afforded the [Commission] two additional weeks to perform its task. . . .

> The U.S. Census Bureau had released 2010 census data to the Commonwealth on March 9, 2011. . . . This data was released well before the deadline provided by federal law. *See* 13 U.S.C. §141 ("basic tabulations of population of each other State, shall, in any event, be completed, reported and transmitted to each respective State within one year after the decennial census date," *i.e.*, April 1, 2011).

*Holt v. 2011 Legislative Reapportionment Commission*, 38 A.3d 711, 719 (Pa. 2012).

13

If necessary, it is only these parties, or the Supreme Court acting in their stead pursuant to Article II, Section 17(h), who may be constitutionally compelled to correct any purported deficiencies with a reapportionment plan. Indeed, as the Supreme Court has explained:

> When, however, the legislature is unable or chooses not to act, it becomes the judiciary's role to determine the appropriate redistricting plan. Specifically, while statutes are cloaked with the presumption of constitutionality, it is the duty of this Court, as a co-equal branch of government, to declare, when appropriate, certain acts unconstitutional. Indeed, matters concerning the proper interpretation and application of our Commonwealth's organic charter are at the end of the day for this Court-and only this Court. [*Pap's A.M. v. City of Erie*, 812 A.2d 591, 611 (Pa. 2002)] (noting the Supreme Court has the final word on the meaning of the Pennsylvania Constitution). Further, our Court possesses broad authority to craft meaningful remedies when required. Pa. Const. art. V, §§1, 2, 10;[14] Section 726 of the Judicial Code,] 42 Pa. C.S. §726 (granting power to "enter a final order or otherwise cause right and justice to be done").

*League of Women Voters*, 178 A.3d at 822.

It is undisputed that the Commission has long been disbanded, and that the new legislative reapportionment commission will not be certified for a few months hence. *See* Pa. Const. art. II, §17(b); *Holt*. It is equally undisputed that, as

---

[14] Article V, Section 1 states, in relevant part: "The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace." Pa. Const. art. V, §1. Article V, Section 2 provides, in pertinent part: "The Supreme Court [] shall be the highest court of the Commonwealth and in this court shall be reposed the supreme judicial power of the Commonwealth[.]" Pa. Const. art. V, §2. Finally, Article V, Section 10(a) states, in pertinent part: "The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace[.]" Pa. Const. art. V, §10.

an intermediate appellate court, this Court is not empowered to direct our Supreme Court to act in any particular manner. *See* Pa. Const. art. V, §2. As a result, it would not be appropriate for this Court to grant any of the requested declaratory or injunctive relief. *See, e.g.*, *Brouillette*, 213 A.3d at 358 ("A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.").

Accordingly, the POs are sustained and the petition for review is dismissed.[15]

MICHAEL H. WOJCIK, Judge

Judge Covey did not participate in the decision of this case.
Judge Crompton did not participate in the decision of this case.

---

[15] Based on our disposition of the foregoing POs, we need not consider the remaining POs filed in response to the petition for review.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert L. Holbrook; Abd'allah Lateef;　　：
Terrance Lewis; Margaret Robertson;　　：
National Association for the Advancement　：
of Colored People; NAACP Pennsylvania　　：
State Conference; Philadelphia Branch of　：
the NAACP; University of Pennsylvania　　：
Chapter of the NAACP; Progressive　　　：
NAACP; and University of Pennsylvania　　：
Chapter of Beyond Arrest: Rethinking　　：
Systematic-Oppression,　　　　　　　　：
　　　　　　　　　　　　　　　　　　　：
　　　　　　　Petitioners　　　　　　　：
　　　　　　　　　　　　　　　　　　　：
　　　　　　v.　　　　　　　　：　No. 184 M.D. 2020
　　　　　　　　　　　　　　　　　　　：
Commonwealth of Pennsylvania; Thomas　：
W. Wolf, in his official capacity as　　　：
Governor of Pennsylvania; and Kathy　　：
Boockvar, in her official capacity as　　　：
Secretary of the Commonwealth of　　　：
Pennsylvania,　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　：
　　　　　　　Respondents　　　　　　：

# O R D E R


　　　　AND NOW, this 14th day of January, 2021, the preliminary objections

of the above-named Respondents are SUSTAINED, and the petition for review is

DISMISSED.


　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　MICHAEL H. WOJCIK, Judge